Opinion filed July 31, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00198-CR

_____

## HALEY FORSYTH, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 167th District Court**
**Travis County, Texas**
**Trial Court Cause No. D1DC10203431**

## O P I N I O N

The grand jury indicted Haley Forsyth for the felony offense of driving while intoxicated. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b)(2) (West Supp. 2013). Appellant moved to suppress the results of her blood draw and argued that the officer seized her blood in violation of the Fourth Amendment. The trial court denied her motion to suppress. Appellant pleaded guilty to the offense, and the trial court assessed Appellant's punishment at confinement for a term of six years

and a fine of $500. The trial court suspended Appellant's sentence and placed Appellant on community supervision for a term of three years. This appeal ensued. On appeal, Appellant contends that the trial court erred when it denied her motion to suppress the results of the blood draw. Because we find that the officer seized Appellant's blood in violation of the Fourth Amendment, we reverse and remand.

In a single issue, Appellant asserts that Section 724.012(b)(3)(B) of the Texas Transportation Code is unconstitutional as applied because the statute requires police to forcibly take a blood sample from a DWI arrestee without a search warrant and without demonstrating an exception to the warrant requirement.[1] Section 724.012 of the Texas Transportation Code provides that an officer "shall require the taking of a specimen of the person's breath or blood . . . if the officer arrests the person for [DWI] and the person refuses the officer's request to submit to the taking of a specimen voluntarily" and, "at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person" has been twice convicted of DWI. TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (West 2011). Section 724.011 provides that, if a person is arrested for DWI, the person is deemed to have consented to the submission of a specimen of breath or blood for analysis in order to determine the alcohol concentration in the person's body. *Id.* § 724.011.

Appellant specifically argues that the trial court erred when it denied her motion to suppress the blood draw results because the officer took her blood without a warrant, without her consent, and without any exigent circumstances

---

[1]We note that Appellant argued in a supplemental brief that the statute was also unconstitutional on its face. The State argued that Appellant did not present that argument below and cannot present a facial challenge to the statute for the first time on appeal. We agree with the State's position and, therefore, will not address Appellant's facial challenge to TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B) (West 2011). *See* TEX. R. APP. P. 33.1; *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (holding that defendant may not raise a facial challenge to the constitutionality of a statute for the first time on appeal).

present. We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Because the trial court is the exclusive factfinder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche*, 10 S.W.3d at 327. We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 87. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Id.*

The evidence at the suppression hearing showed that Sergeant Christine Jacobson of the Austin Police Department stopped Appellant for failing to signal her intent to turn right. At some point in the stop, Appellant was suspected of DWI. Officer Steven McDaniel assisted Sergeant Jacobson in her investigation. Officer McDaniel conducted several field sobriety tests, and as a result of Appellant's performance, Officer McDaniel arrested Appellant for DWI. A criminal history check and Appellant's own admissions revealed that Appellant had two prior convictions for DWI. Appellant refused to submit to a breath or blood test. Relying on Section 724.012 of the Texas Transportation Code, Officer McDaniel transported Appellant to Brackenridge Hospital for a mandatory blood draw. He estimated that it took approximately thirty to forty-five minutes for hospital personnel to draw Appellant's blood. Appellant's blood alcohol level was 0.18.

Officer McDaniel testified that the hospital was "[a] couple of miles" from the stop and that it was "[m]aybe a ten-minute drive." The central booking facility was also about a ten-minute drive from the scene of the stop. Officer McDaniel

acknowledged that there were magistrates available to issue a search warrant twenty-four hours a day, but stated that he could not have secured a warrant because that "is not what you do according to law or policy." There were no other circumstances that caused him to go directly to the hospital to take Appellant's blood instead of first going to a judge to get a warrant.

Sergeant Glen Kreger testified that it could take up to one and one-half hours to get a warrant for a blood draw, but that he had obtained a warrant almost immediately when the magistrate was available in his office. On average, from the time of the stop to the time the blood is drawn, it takes two hours to get a blood draw with a warrant. Sergeant Kreger stated that, based on his training and experience, it is always faster to get a blood draw without a warrant than it is with a warrant.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. The Supreme Court has held that a warrantless search of the person is reasonable only if it falls within a recognized exception to the warrant requirement. *Missouri v. McNeely*, 133 S.Ct. 1552, 1558 (2013).

Here, the trial court found that Officer McDaniel did not make an attempt to obtain a warrant even though the officer was aware that there were magistrates available twenty-four hours a day at the central booking facility located about the same distance away from the stop as the hospital. The trial court further found that there were no exigent circumstances established by the evidence except for the natural dissipation of alcohol in Appellant's bloodstream. The court also discussed the issue of implied consent, even though it was not expressly relied on by the State, and stated that "under present law a driver is apparently agreeing to the use of physical force to extract his blood based on a single police officer's opinion

4

without any review by an independent magistrate." Recognizing that the court had to defer to higher authority, the court denied Appellant's motion to suppress.

We first note that, at the time of its ruling on Appellant's motion to suppress, the trial court did not have the benefit of the United States Supreme Court's decision in *Missouri v. McNeely*. The Supreme Court held in *McNeely* that the natural dissipation of alcohol in the bloodstream does not present a per se exigency that justifies an exception to the warrant requirement for nonconsensual blood testing in all DWI cases. 133 S.Ct. at 1561–63. The Court explained that lower courts must determine on a case-by-case basis whether exigent circumstances exist beyond the natural dissipation of alcohol in the bloodstream. *Id.*

In this case, the trial court found that there were no exigent circumstances beyond the natural dissipation of alcohol in Appellant's bloodstream. Although Sergeant Kreger testified that in certain situations an officer may have to wait over one and one-half hours for a warrant, there was no evidence presented by the State in this particular case of how long Officer McDaniel would have had to wait on a warrant. Because the State failed to present evidence of any other exigent circumstances beyond the natural dissipation of alcohol in Appellant's bloodstream, we cannot uphold the trial court's ruling on the ground that exigent circumstances existed.

The State makes three main arguments throughout its supplemental briefs as to why the trial court did not err when it denied Appellant's motion to suppress even if the search was not conducted pursuant to the exigent circumstances exception to the warrant requirement. First, the State argues that implied consent is a valid exception to the warrant requirement and that implied consent under the Transportation Code is irrevocable. The State asserts that a person can refuse to submit a specimen but that a person cannot withdraw consent. Second, the State argues that mandatory blood draws are not unreasonable searches under the Fourth

Amendment; therefore, no warrant is required. Under this argument, the State asks us to conduct a traditional Fourth Amendment balancing test and weigh the government's interest against the individual's privacy interests. Third, the State argues that, even if mandatory blood draws are no longer permitted, mandatory blood draws were permitted at the time that the officer drew Appellant's blood. The State contends that *McNeely* created a more restrictive rule than what was in place at the time of the blood draw. Thus, because the officer did not violate the law when he drew Appellant's blood, the evidence should not be suppressed under the Texas exclusionary rule.

We note that the State did not make any of these arguments to the trial court below. However, because neither the parties nor the trial court had the benefit of the Supreme Court's decision in *McNeely* during the suppression hearing, we will address each of the State's arguments in turn. The San Antonio Court has recently addressed and rejected each of these arguments in *Weems v. State*, No. 04-13-00366-CR, 2014 WL 2532299 (Tex. App.—San Antonio May 14, 2014, pet. filed).[2] In *Weems*, the court held that the implied consent and mandatory blood draw statutory scheme found in the Texas Transportation Code were not exceptions to the Fourth Amendment's warrant requirement. *Weems*, 2014 WL 2532299, at *8. In reaching its decision, the court pointed out that the Supreme Court had granted certiorari in an earlier opinion in which the San Antonio Court held that a warrantless blood draw of a DWI suspect that was conducted according to the prescriptions of the Transportation Code did not violate the suspect's rights under the Fourth Amendment. *Id.* at *4 (discussing *Aviles v. State*, 385 S.W.3d 110 (Tex. App.—San Antonio 2012, pet. ref'd), *vacated*, 134 S.Ct. 902 (2014)).

---

[2]We note that this a transfer case from the Austin Court of Appeals, but that the Austin court has not ruled on the issue before us. Therefore, we will review other courts' rulings for guidance. *See* TEX. R. APP. P. 41.3; *Sutherland v. State*, No. 07-12-00289-CR, 2014 WL 1370118, at *9 n.4 (Tex. App.—Amarillo Apr. 7, 2014, pet. filed) (noting Austin had not spoken on the issue).

The court in *Aviles*, relying on dicta from *Beeman v. State*, 86 S.W.3d 613, 615 (Tex. Crim. App. 2002), explained that the implied consent law allows officers to draw blood in certain situations without a search warrant and that whether an officer could obtain a warrant prior to the blood draw was immaterial given the mandate of the Transportation Code. *Aviles*, 385 S.W.3d at 115–16. The United States Supreme Court remanded the case to the San Antonio court for further consideration in light of *McNeely*. *Aviles v. Texas*, 134 S.Ct. 902 (2014). Citing to several intermediate appellate court opinions for guidance, the court in *Weems* agreed that, by remanding *Aviles*, the Supreme Court had rejected the argument that the implied consent statute under the Transportation Code was an exception to the warrant requirement. *Weems*, 2014 WL 2532299, at *7–8 (citing *Sutherland*, 2014 WL 1370118; *State v. Villarreal*, No. 13-13-00253-CR, 2014 WL 1257150 (Tex. App.—Corpus Christi Jan. 23, 2014, pet. granted)).

The State in this case urges us not to adopt the reasoning and holding of our sister courts regarding whether implied consent is a recognized exception. The State argues that the Supreme Court routinely remands cases to lower courts, so that lower courts can have an opportunity to review the holdings in such cases in light of the recent Supreme Court opinion, but that these routine remands do not imply that the Supreme Court has rejected the holdings of such cases. The State asks us to follow the precedent set by the Texas Court of Criminal Appeals in *Beeman*.

The trial court noted in its ruling that the Texas Court of Criminal Appeals appears to have adopted the view that implied consent is an exception to the warrant requirement. The Court of Criminal Appeals has stated that the implied consent law "implies a suspect's consent to a search in certain instances," which "is important when there is no search warrant, since it is another method of conducting a constitutionally valid search." *Beeman*, 86 S.W.3d at 615. The court

7

explained that "[t]he implied consent law expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant. It gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant." *Id.* at 616. The State argues that, under the language of *Beeman*, implied consent is a valid exception to the warrant requirement. Thus, because Officer McDaniel seized Appellant's blood under the implied consent statute, the State asserts that Officer McDaniel did not seize Appellant's blood in violation of the Fourth Amendment.

In *Beeman*, however, the officers obtained a warrant and, thus, the court found that compliance with the implied consent statute was not necessary. *Id.* at 615–16. The court stated that consent, express or implied, was a moot issue. *Id.* at 616. Furthermore, the implied consent statute, at the time *Beeman* was issued, did not contain a provision directing officers to take the blood of a DWI arrestee that had previously been twice arrested for DWI. *See* Act of June 19, 2009, 81st Leg., R.S., ch. 1348, § 18, 2009 Tex. Sess. Law Serv. 4262, 4267–68 (West) (amending TEX. TRANSP. CODE ANN. § 724.012(b) to include repeat offender language). The court's explanation of implied consent law in *Beeman* is dicta; therefore, we are not bound by it. Regardless of whether the Supreme Court's remand of *Aviles* indicates the Court's rejection of implied consent as an exception, we decline to rely on *Beeman* for the proposition that implied consent is a valid exception to the warrant requirement.

The State also contends that the Supreme Court cited favorably to implied consent statutes throughout the country in its *McNeely* opinion. *McNeely* did not address whether implied consent was a valid exception to the warrant requirement; however, *McNeely* did refer to implied consent laws as an example of a tool that the States have "to secure BAC evidence without undertaking warrantless

8

nonconsensual blood draws." 133 S.Ct. at 1566. The Court stated, "Such laws impose significant consequences when a motorist withdraws consent," such as the suspension of the motorist's driver's license and the right of the State to use the motorist's refusal against the motorist in a subsequent criminal prosecution. *Id.* However, the Court did not indicate whether an officer could take a person's blood based on implied consent alone. The Court's language does suggest, however, that an accused can withdraw his or her consent to submit a specimen for testing in direct contradiction to the State's argument that implied consent is irrevocable.[3]

The Supreme Court has held that a suspect may delimit the scope of the search to which she consented. *Florida v. Jimeno*, 500 U.S. 248, 252 (1991). In addition, the Fifth Circuit has held that consent may be limited, qualified, or withdrawn. *Mason v. Pulliam*, 557 F.2d 426, 428–29 (5th Cir. 1977). The Texas Court of Criminal Appeals has also recognized that a person is free to limit the scope of the consent she gives. *Valtierra v. State*, 310 S.W.3d 442, 449 (Tex. Crim. App. 2010). However, the State directs us to *Forte v. State*, 759 S.W.2d 128, 138 (Tex. Crim. App. 1988), *overruled on other grounds by McCambridge v. State*, 778 S.W.2d 70, 76 (Tex. Crim. App. 1989), for the proposition that a DWI suspect cannot withdraw implied consent. In *Forte*, the court stated that "consent being implied by law, a driver may not legally refuse. A driver, however, can physically refuse to submit, and the implied consent law, recognizing that practical reality, forbids the use of physical force to compel submission." 759 S.W.2d at 138 (quoting *State v. Spencer*, 750 P.2d 147, 153 (Or. 1988)). The Court of Criminal Appeals quoted this same language in *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012), but then went on to explain that a suspect's consent to a breath or blood test must be freely and voluntarily given. When a person refuses

---

[3]We note that Justice Sotomayor's reference and discussion of implied consent laws was not joined by a majority of the Court.

to submit, we can see no way to legitimately find that the suspect consented to the mandatory blood draw voluntarily. Thus, regardless of whether the Transportation Code forecloses a suspect's ability to legally withdraw implied consent, a person cannot be said to have consented for the purpose of satisfying the voluntary consent exception to the warrant requirement. *But see Chapa v. State*, No. A14-87-00796-CR, 1988 WL 137628, at *1 (Tex. App.—Houston [14th Dist.] Dec. 22, 1988, pet. ref'd) (not designated for publication) (holding defendant could not complain that she involuntarily gave consent to take the breath test because, under holding in *Forte*, defendant could not revoke her implied legal consent to take the test).

For consent to search to be valid as an exception to the warrant requirement, the consent must be given voluntarily, without coercion by threats or force and not as the result of duress. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 224–25, 229, 233, 248 (1973). Moreover, when the State seeks to rely upon consent to justify a warrantless search, the State has the burden of proving that the consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). The State cannot meet this burden when the suspect has refused to give a specimen of breath or blood because the suspect has clearly not given consent freely and voluntarily. The suspect may very well acquiesce to the officer's authority and allow medical personnel to draw his or her blood; however, mere acquiescence to a claim of lawful authority does not discharge the burden imposed upon the State to show that the suspect freely and voluntarily consented. *See id.* at 548–49. We decline to hold that implied consent under the Transportation Code is the equivalent to voluntary consent as a recognized exception to the warrant requirement.

For all of the reasons we have discussed above, we agree with our sister courts' holdings that implied consent under the Texas Transportation Code is not a

10

recognized exception to the warrant requirement. *See Weems*, 2014 WL 2532299 (holding that the implied consent and mandatory blood draw statutory scheme found in the Transportation Code are not exceptions to the Fourth Amendment's warrant requirement; warrantless blood draw must be based on a well-recognized exception to the Fourth Amendment); *Holidy v. State*, No. 06-13-00261-CR, 2014 WL 1722171 (Tex. App.—Texarkana Apr. 30, 2014, pet. filed) (mem. op., not designated for publication) (holding that officer violated defendant's Fourth Amendment rights when he took defendant's blood pursuant to Section 724.012(b)(3)(B) without a warrant or exigent circumstances); *Reeder v. State*, 428 S.W.3d 924 (Tex. App.—Texarkana  2014, pet. filed) (op. on reh'g) (holding warrantless blood draw pursuant to repeat offender provision of implied consent statute violated the Fourth Amendment in absence of warrant or exigent circumstances); *Sutherland*, 2014 WL 1370118 (holding warrantless blood draw pursuant to repeat offender provision of implied consent statute violated Fourth Amendment's warrant requirement in the absence of exigent circumstances or the suspect's consent); *Villarreal*, 2014 WL 1257150 (holding repeat offender provision of the mandatory blood draw law did not constitute an exception to the Fourth Amendment's warrant requirement).  Therefore, we cannot uphold the trial court's ruling on the ground of implied consent.

The State's second argument as to why the trial court did not err when it denied Appellant's motion to suppress is that a warrant is not required for mandatory blood draws because mandatory blood draws are reasonable searches under the Fourth Amendment.  The State urges us to conduct a traditional Fourth Amendment balancing test and weigh the government's interest against the individual's privacy interests.  In so doing, the State contends that we will find that the government's interest is greater than the privacy interests of any given individual.  The San Antonio court rejected this argument in *Weems*.  2014 WL

2532299, at \*8. The court found that the implied consent and mandatory blood draw statutes created categorical or per se rules for warrantless blood testing because the statutes did not take into account the totality of the circumstances present in individual cases. *Id.* The court further found that *McNeely* clearly proscribed the use of per se rules and that the Supreme Court emphasized that the reasonableness of a search must be determined by the totality of the circumstances presented in the case. *Id.* (citing *McNeely*, 133 S.Ct. at 1560–63).

In Section III of the *McNeely* opinion, Justice Sotomayor weighed the interests of both the government and the individual in relation to a per se exigency rule and determined that the government's interests did not outweigh the privacy interests of the individual. 133 S.Ct. at 1556, 1564–67. Although Section III was not joined by the majority of the Court, the majority of the Court did state, "Our cases have held that a warrantless search of the person is reasonable only if it falls within a recognized exception." *Id.* at 1558. The majority described blood draws as "a compelled physical intrusion beneath [the accused's] skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation." *Id.* The Court further stated, "Such an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'" *Id.* (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)). The Court went on to discuss its decision in *Schmerber v. California*, 384 U.S. 757 (1966), and said, "Noting that '[s]earch warrants are ordinarily required for searches of dwellings,' we reasoned that 'absent an emergency, no less could be required where intrusions into the human body are concerned,' even when the search was conducted following a lawful arrest." *Id.* (alteration in original) (quoting *Schmerber*, 384 U.S. at 770).

Based on the language in *McNeely* and the reasoning of our sister court in *Weems*, we decline to hold that mandatory blood draws under the Texas

12

Transportation Code are per se reasonable and further decline to hold that an officer is not required to obtain a warrant for the blood draw or show that the blood draw was conducted under a recognized exception to the warrant requirement. Therefore, we also cannot uphold the trial court's denial of Appellant's motion to suppress on this ground.

The State's final argument is that, even if mandatory blood draws are no longer permitted, mandatory blood draws were permitted at the time that Officer McDaniel seized Appellant's blood. Specifically, the State contends that *McNeely* created a more restrictive rule than what was in place at the time of Appellant's blood draw. Thus, because Officer McDaniel did not violate the law when he drew Appellant's blood, the evidence should not be suppressed under the Texas exclusionary rule. We disagree.

Officer McDaniel did violate the Fourth Amendment when he took Appellant's blood without a warrant and without showing that he did so under a valid exception to the warrant requirement. While the Supreme Court may have clarified its decision in *Schmerber* with its decision in *McNeely*, the law did not change. There was never a per se rule that the natural dissipation of alcohol in a person's bloodstream was enough, standing alone, to satisfy the exigency exception to the warrant requirement. That is precisely what the State of Missouri was asking for in *McNeely* and precisely what the Supreme Court declined to adopt.

Furthermore, as the Corpus Christi court pointed out, Section 724.012 does not instruct an officer to take a person's blood without a warrant or in violation of the Fourth Amendment. *Villarreal*, 2014 WL 1257150, at *11. And, as the San Antonio court pointed out, there is no exception under the Texas exclusionary rule for a good faith reliance upon a statute. *Weems*, 2014 WL 2532299, at *9. "Article 38.23 provides for an exception to the exclusionary rule only when an

officer relies in good faith *upon a warrant* issued by a neutral magistrate based on probable cause." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 38.23(b) (West 2005)). Therefore, we do not agree with the State's argument that Officer McDaniel's good faith reliance on the implied consent statute created an exception to the exclusionary rule. Thus, the exclusionary rule applies, and we cannot uphold the trial court's ruling on the basis that Officer McDaniel did not violate the law at the time of Appellant's blood draw.

In conclusion, we hold that in this case there were no exigent circumstances presented by the State to justify its warrantless seizure of Appellant's blood. We also hold that implied consent is not a recognized exception to the warrant requirement and that the idea that implied consent cannot be revoked is in direct conflict with the voluntary consent exception to the warrant requirement. We further hold that the government's interests in combatting drunk drivers does not outweigh the privacy interests of individuals to the extent that individuals arrested for DWI, who have already been twice convicted of DWI, should be forced to submit a breath or blood specimen without requiring the arresting officer to secure a warrant or rely on an exception to the warrant requirement. And finally, we hold that the Texas exclusionary rule does require that the results from the blood draw in this case be suppressed. Therefore, the trial court erred when it denied Appellant's motion to suppress.

Because the warrantless blood draw violated Appellant's rights under the Fourth Amendment, we must reverse the judgment unless we determine beyond a reasonable doubt that the trial court's error did not contribute to the conviction or punishment. *See* TEX. R. APP. P. 44.2(a). Here, Appellant pleaded guilty to the third degree felony offense of DWI, under a plea bargain with the State, after the trial court denied her motion to suppress. We cannot say, beyond a reasonable doubt, that the trial court's error did not contribute to Appellant's decision to plead

guilty to the offense.  Therefore, we must reverse the judgment.  Appellant's sole issue on appeal is sustained.

We reverse the judgment of the trial court and remand this cause to the trial court for further proceedings consistent with this opinion.


JIM R. WRIGHT

CHIEF JUSTICE


July 31, 2014

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.