**Opinion filed August 21, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00347-CR
_____

## LAURA DENISE MOORE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 372nd District Court**

**Tarrant County, Texas**

**Trial Court Cause No. 1311911D**

## M E M O R A N D U M   O P I N I O N

The judgment of the trial court in this case reflects that the jury found Appellant, Laura Denise Moore, guilty of "driving while intoxicated and felony repetition," a third-degree felony.[1]  Appellant elected to have the trial court assess punishment, and it assessed Appellant's punishment at confinement for ten years

---

[1]TEX. PENAL CODE ANN. §§ 49.04, 49.09(b) (West Supp. 2014).

and a $1,500 fine.[2]  The trial court suspended the confinement portion of the sentence and placed Appellant on community supervision for a term of five years.  We reverse and remand.

## I. *The Charged Offense*

The grand jury returned an indictment alleging that Appellant operated a motor vehicle in a public place while intoxicated and that Appellant had twice before been convicted of the offense of driving while intoxicated.  A person commits the offense of driving while intoxicated, felony repetition, "if the person is intoxicated while operating a motor vehicle in a public place" and it is shown that "the person has previously been convicted . . . two times of any other offense relating to the operating of a motor vehicle while intoxicated."  PENAL §§ 49.04(a), 49.09(b)(2).

## II. *Issues Presented*

Appellant argues, in her first issue, that the trial court erred when it denied her motion to suppress evidence from the blood draw because her blood was drawn illegally.[3]  In her second and third issues, she argues that the trial court erred when it denied her requests for a jury instruction under Article 38.23 of the Texas Code of Criminal Procedure[4] on the validity of the traffic stop and the blood draw.  In her final issue, Appellant argues that the trial court erred when it denied her motion for mistrial after the State's witness improperly testified about an alleged extraneous offense.

---

[2]*See* PENAL § 12.34 (West 2011).

[3]Appellant's case is a transfer case from the Second Court of Appeals in Fort Worth, and under Rule 41.3 of the Texas Rules of Appellate Procedure, we apply its precedent unless we determine that our sister court would decline to do so.

[4]*See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005).

### III. *Evidence at Trial*

Officer Mark Miller of the Bedford Police Department was on patrol at approximately 4:50 a.m. when he saw Appellant come "very close to failing to yield" to other cars. Officer Miller then saw Appellant abruptly make an illegal left turn from the center lane. He turned on his emergency lights and stopped Appellant. Before he could speak to Appellant, she drove her vehicle out of the parking lot and onto the street. Officer Miller pursued her with both his emergency lights and siren activated, and Appellant abruptly pulled into the parking lot of a shopping center.

Appellant was seated in the driver's seat of her vehicle. Officer Miller approached Appellant. When he reached the window area where Appellant was seated, he smelled a "moderate odor of alcoholic beverage" and also noticed that Appellant's eyes were "extremely watery." He asked Appellant where she was coming from and where she was going; Appellant answered "home" to each question. Officer Miller described Appellant's speech as "very slurred." Based on his observations, Officer Miller decided to conduct a standardized field sobriety test. The test is composed of three parts. Appellant failed two of the three parts, and based on those results and Officer Miller's observations before he administered the sobriety test, he arrested her for driving while intoxicated. Officer Miller transported Appellant to the jail.

Officer Miller also learned from questioning Appellant and from a check of criminal history records, that she had been convicted of driving while intoxicated on two previous occasions. Officer Miller read Appellant the statutory warnings on the DIC-24 form[5] and asked if she would provide him with a breath sample; she refused. Officer Miller testified that, because Appellant had two prior convictions for driving

---

[5] A DIC-24 warning is a Department of Public Safety Form that provides the warnings outlined in Section 724.015 of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 724.015 (West 2011).

while intoxicated, he was required[6] to obtain a sample of Appellant's blood or breath. Officer Miller secured a blood draw kit, transported Appellant to a local hospital, and had a registered nurse draw a specimen of Appellant's blood. Officer Miller noted that he could have obtained a warrant but that he did not do so because he had arrested Appellant for driving while intoxicated after she already had two prior convictions for that same offense.

## IV. *Analysis*

We will only address Appellant's first issue. As we explain below, the resolution of that issue obviates the need for us to address her remaining issues.

### A. *Standard of Review*

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give great deference to the trial court's findings of historical facts if the record supports the findings. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Because the trial court is the exclusive factfinder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche*, 10 S.W.3d at 327. We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 87. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Id.*

### B. *Motion to Suppress*

Appellant argued in her pretrial motion to suppress that the blood draw and the test results were inadmissible because the blood specimen had been illegally drawn. The trial court initially denied her motion. At trial, Appellant re-urged her objection, and the trial court carried the motion through trial and then denied it again.

---

[6]*See* TRANSP. § 724.012(b).

4

Appellant asserts that the taking of her blood was in violation of her constitutional rights because the blood draw was conducted without a warrant, consent, or any other recognized exception to the warrant requirement.

The State asserts that the blood draw was constitutional because it was reasonable and that, regardless, the exceptions of implied consent and search incident to arrest dispensed with the warrant requirement. Further, the State asserts that, even if the search was not reasonable and no warrant exception applies, the exclusionary rule does not operate to exclude the evidence. Absent a warrant, a search is presumed unreasonable, and the State carries the burden to prove that an exception to the warrant requirement applies. *See Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). The State stipulated that Appellant's blood was drawn without a warrant. Therefore, the State had the burden to prove an exception to the warrant requirement.

*C. Implied Consent*

The State first argues that Officer Miller had implied consent to draw Appellant's blood in accordance with Section 724.012 of the Texas Transportation Code. *See* TRANSP. § 724.012. Section 724.012 provides that an officer "shall require the taking of a specimen of the person's breath or blood . . . if the officer arrests the person for [DWI] and the person refuses the officer's request to submit to the taking of a specimen voluntarily" and if one of three circumstances is met. *Id.* § 724.012(b). The relevant circumstance is that, "at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person" has been convicted of driving while intoxicated on two prior occasions. *Id.* § 724.012(b)(3)(B). Section 724.011 provides that, if such a person is arrested for driving while intoxicated, the person is deemed to have consented to the submission of a specimen of breath or blood for analysis to determine the alcohol concentration in the person's body. *Id.* § 724.011.

Implied consent under the Texas Transportation Code is not a recognized exception to the warrant requirement, and the State cannot rely on it alone to justify a warrantless blood draw. *See Burks v. State*, 454 S.W.3d 705, 708–09 (Tex. App.—Fort Worth 2015, pet. filed); *Forsyth v. State*, 438 S.W.3d 216, 223 (Tex. App.—Eastland 2014, pet. ref'd); *Douds v. State*, 434 S.W.3d 842, 861 (Tex. App.—Houston [14th Dist.] 2014, pet. granted); *Weems v. State*, 434 S.W.3d 655, 664 (Tex. App.—San Antonio 2014, pet. granted). We note the reasoning and holdings in these cases, and we decline to adopt the State's argument that it had implied consent to draw Appellant's blood without a warrant. We cannot uphold the trial court's ruling on such grounds.

### D. Fourth Amendment Reasonableness

The State next asserts that the mandatory blood draw was a reasonable search under the Fourth Amendment and that a warrant was not required. Under a Fourth Amendment balancing test, we balance the intrusion on the person's Fourth Amendment interests against the promotion of a legitimate interest of the government. *See Schenekl v. State*, 30 S.W.3d 412, 413 (Tex. Crim. App. 2000). The Supreme Court has described a blood draw as "a compelled physical intrusion beneath [the accused's] skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation." *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013). The Supreme Court continued, "Such an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'" *Id.* (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)).[7] We have considered this issue before, and we have declined "to hold that mandatory blood draws under the Texas Transportation Code are per se reasonable." *Forsyth*, 438 S.W.3d at 224.

---

[7]We note that the Court of Criminal Appeals recently addressed, under the Fourth Amendment to the United States Constitution, the constitutionality of warrantless, nonconsensual blood draws under Section 724.012 of the Texas Transportation Code. *See State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014). We also note that the Court of Criminal Appeals granted rehearing in *State v. Villarreal* on February 25, 2015.

Officer Miller testified that he relied on the implied consent provision of the Texas Transportation Code as justification for the warrantless blood draw. He also agreed he could have obtained a warrant, but he chose to rely on the statute because Appellant's arrest for driving while intoxicated followed two prior convictions for the same offense. In that context, and considering that mandatory blood draws are not per se reasonable, we cannot uphold the trial court's decision that the warrantless blood draw was reasonable. *Forsyth*, 438 S.W.3d at 224.

### E. Search Incident to Arrest

The State's third argument is that the mandatory blood draw constitutes a lawful search "incident to arrest." The search-incident-to-arrest exception to the warrant requirement applies only if the search is "substantially contemporaneous" with the arrest and is also confined to the area within the immediate control of the suspect. *State v. Granville*, 423 S.W.3d 399, 410 (Tex. Crim. App. 2014) (quoting *Vale v. Louisiana*, 399 U.S. 30, 33 (1970)). The purpose of the search is to protect the officer, prevent an escape, or protect the loss or destruction of evidence. *Id.* at 410. Therefore, when a search is not sufficiently close in time or place to the arrest, then the search-incident-to-arrest exception is not normally justified. *Id.* Furthermore, the exception is usually applied to an "active attempt by a defendant or his associates to conceal or destroy evidence upon arrest." *Riley v. California*, 134 S. Ct. 2473, 2486 (2014).

Appellant's blood was drawn at a hospital after Appellant had been arrested and transported to the jail and then to the hospital. Under these facts, we cannot say that officer safety or prevention of escape was implicated. As to the argument that the blood draw was necessary to protect the destruction of evidence, we cannot say that the natural dissipation of alcohol in the blood constitutes an "active attempt . . . to conceal or destroy evidence." *Id.* Based upon the rationale of the search-incident-to-arrest exception to the warrant requirement and upon the fact that the

search was not close in time or place to the arrest, we hold that such an exception is not applicable in this case to support the warrantless blood draw.

### F. Exclusionary Rule

The State's final argument is that, even if the blood draw was unlawful, the Texas exclusionary rule does not apply because Officer Miller followed an existing statute that had not been held unconstitutional when he arranged for the warrantless blood draw. We disagree with the State's contention. Article 38.23 of the Texas Code of Criminal Procedure, the Texas exclusionary rule, states, "No evidence obtained by an officer . . . in violation of any provisions of the Constitution or laws of [either Texas or the United States], shall be admitted in evidence against the accused on the trial of any criminal case." CRIM. PROC. art. 38.23(a).

The statute also provides an exception to the exclusionary rule, but "only when an officer relies in good faith *upon a warrant* issued by a neutral magistrate based on probable cause." *Weems*, 434 S.W.3d at 666–67 (citing CRIM. PROC. art. 38.23(b)). There is no exception to the Texas exclusionary rule for good faith reliance on a statute. *Burks*, 454 S.W.3d at 709; *Forysth*, 438 S.W.3d at 224; *Douds*, 434 S.W.3d at 861; *Weems*, 434 S.W.3d at 666–67. Officer Miller did not obtain a warrant, and no exception to the exclusionary rule applies. And nothing in Section 724.012 of the Transportation Code instructs an officer to take a suspect's blood without a warrant or provides a valid exception to the warrant requirement of the Fourth Amendment. *See* TRANSP. § 724.012; *see also Forsyth*, 438 S.W.3d at 224–25. Thus, the evidence should have been excluded. We sustain Appellant's first issue.

### G. Rule 44.2(a) Harm Analysis

Because the warrantless mandatory blood draw violated Appellant's rights under the Fourth Amendment, we must reverse the judgment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or

punishment. TEX. R. APP. P. 44.2(a); *Weems*, 434 S.W.3d at 667. The jury was instructed as follows:

"Intoxicated" means:

(A) not having the normal use of one's mental or physical faculties by reason of the introduction of alcohol into the body; OR

(B) having an alcohol concentration of 0.08 or more.

Officer Miller testified that he stopped Appellant because she came very close to failing to yield to other cars and then made an illegal left turn from the center lane. Officer Miller stopped Appellant, but before he could speak to her, she drove away. Officer Miller stopped her again when she pulled into a parking lot at a shopping center. He spoke to her and noticed a moderate odor of alcohol. Officer Miller said Appellant's eyes were watery and her speech was very slurred. He conducted a field sobriety test in three parts. Appellant failed two parts, and Officer Miller arrested her.

At the jail, Appellant refused to take a breath test. Subsequently, her blood was taken by a nurse, who handed the blood samples to Officer Miller. Officer Miller placed them in evidence envelopes and put them in a refrigerated locker in a secure location at the jail. The samples were then taken to the Integrated Forensic Laboratories where forensic scientist Aubrey Norberg worked. Norberg tested the blood samples from Appellant and testified that Appellant's blood alcohol concentration (BAC) was 0.16 grams of ethyl alcohol per 100 milliliters of whole blood. The State emphasized this evidence during trial. After a review of the record, we cannot say beyond a reasonable doubt that the blood sample evidence did not contribute to Appellant's conviction. *See* TEX. R. APP. P. 44.2(a); *Weems*, 434 S.W.3d at 667; *see also Forsyth*, 438 S.W.3d at 225.

## V. *Conclusion*

We hold that the trial court erred when it denied Appellant's motion to suppress the evidence from the blood draw. In light of that holding, we need not address Appellant's other issues.

## VI. *This Court's Ruling*

We reverse the judgment of the trial court and remand this cause to the trial court for further proceedings consistent with this opinion.


MIKE WILLSON

JUSTICE


August 21, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.