**Reversed and Remanded and Majority and Dissenting Opinions filed November 13, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00208-CR

---

**JONATHAN ALBERT LEAL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Cause No. 12CR0947**

---

## M A J O R I T Y   O P I N I O N

Appellant Jonathan Albert Leal was stopped for failing to yield the right of way. Appellant was arrested on suspicion of driving while intoxicated (DWI) and, over his explicit refusal, compelled by the arresting officer to submit to a warrantless intrusion into his veins. Appellant was convicted of felony DWI. *See* Tex. Penal Code Ann. §§ 49.04, 49.09(b) (West 2011 & Supp. 2014).

Appellant presents this court with two issues for review. The first issue is whether the traffic stop was supported by reasonable suspicion. The second issue is whether, under *Missouri v. McNeely*, — U.S. —, 133 S. Ct. 1552 (2013), and based solely on the arresting officer's application of the repeat-offender provision of the implied-consent statute, *see* Tex. Transp. Code Ann. § 724.012(b)(3)(B) (West 2011), the State was justified in obtaining a blood sample from appellant's veins without a warrant.

With regard to appellant's first issue, we hold that the officer in this case had sufficient evidence to justify the warrantless temporary detention of appellant. With regard to appellant's second issue, we hold that the intrusion into appellant's veins was an unreasonable warrantless search in violation of the Fourth Amendment. We therefore reverse the trial court's judgment and remand to the trial court for a new trial consistent with this opinion.

## I. FACTS AND PROCEDURAL BACKGROUND

Early in the morning of April 2, 2012, Jacob Hodges[1] was on patrol driving east in the right lane of West Main Street in League City, Galveston County, Texas. Hodges observed appellant approaching West Main Street from an apartment complex parking lot. Appellant was driving a white sport utility vehicle (SUV) approaching from the south at a high rate of speed. Immediately prior to turning onto West Main Street, appellant applied his brakes. This caused the SUV to visibly rock forward, compressing the front suspension. The front end of appellant's SUV entered West Main Street. Hodges had to slam on his brakes in order to avoid a collision.

---

[1] At the time of the events at issue, Hodges was a police officer with the League City Police Department. At the time of trial, Hodges was a special agent with the Drug Enforcement Administration.

As a result of this near collision, Hodges initiated a traffic stop. During the course of the traffic stop, Hodges saw a bottle of rum behind the passenger's seat of appellant's SUV. Hodges noticed that appellant's eyes were red and watery. He also noticed the faint odor of alcohol on appellant's breath. In response to Hodges's questioning, appellant admitted to drinking three mixed drinks. Hodges administered a battery of standardized field sobriety tests. Based on appellant's performance on the sobriety tests and Hodges's personal observations, Hodges concluded that appellant was under the influence of alcohol. Hodges arrested appellant and transported him to the League City jail.

At the jail, Hodges gave appellant the requisite statutory warning regarding the implied-consent statute and the consequences of refusing to submit to the taking of a blood or breath specimen. *See* Tex. Transp. Code Ann. § 724.015 (West Supp. 2014). The warning was given orally and in writing. After receiving the statutory warning, appellant refused to submit to the taking of both a blood and a breath specimen.[2] Hodges then reviewed appellant's criminal history and discovered that appellant had two prior DWI convictions. Per the implied-consent statute, Hodges was required to obtain a specimen of appellant's blood. *See* Tex. Transp. Code Ann. § 724.012(b)(3)(B). Hodges transported appellant to Clear Lake Regional Hospital where a nurse drew appellant's blood. According to Hodges's offense report, appellant was "very uncooperative" at the hospital; three people had to hold appellant down while the nurse took his blood. Hodges did not obtain a search warrant to draw appellant's blood.

Appellant was indicted for operating a motor vehicle in a public place while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a). The indictment alleged two

---

[2] While the written refusal in the record denotes only a refusal to submit a breath specimen, the testimony at trial in response to the State's questioning clearly demonstrates that appellant refused to submit samples of both breath and blood.

3

prior DWI convictions. Appellant stipulated to the validity of the two prior convictions. Appellant filed a motion to suppress challenging the legality of the traffic stop. After conducting a hearing, the trial court denied the motion to suppress.

The case was tried before a jury. Appellant's blood alcohol content, which was nearly three times the legal limit, was admitted into evidence. The jury found appellant guilty of the charged offense, and the trial court assessed punishment at eight years' confinement. The sentence was suspended and appellant was placed on community supervision.

The trial court's judgment was signed on February 15, 2013. Appellant filed his notice of appeal on the same day. On March 8, 2013, appellant filed a motion for new trial, asserting various grounds not pertinent to this appeal. On April 22, 2013, five days after the Supreme Court decided *McNeely*, appellant filed a supplemental motion for new trial in which he challenged the validity of the warrantless blood draw under *McNeely*. The trial court held a hearing on appellant's motion for new trial and ultimately denied the motion. On appeal, appellant challenges (1) the legality of the traffic stop and (2) the legality of the warrantless blood draw.

## II. STANDARD OF REVIEW

A trial court's denial of a motion to suppress and a trial court's denial of a motion for new trial are both reviewed under the abuse of discretion standard. *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013); *Ex parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013). A trial court abuses its discretion if no reasonable view of the record could support its ruling. *Okonkwo*, 398 S.W.3d at 694. We view the evidence in the light most favorable to the trial court's ruling. *Id.*; *Moore*, 395 S.W.3d at 158. At a hearing on the motion, the trial court is the

4

sole judge of witness credibility and the weight given to witness testimony. *Okonkwo*, 398 S.W.3d at 694; *Moore*, 395 S.W.3d at 158. We must afford almost total deference to the trial court's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Okonkwo*, 398 S.W.3d at 694; *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013). When the trial court does not make explicit findings of fact, we assume the trial court made implicit findings of fact supported by the record. *Okonkwo*, 398 S.W.3d at 694; *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).

We review de novo (1) questions of law based on undisputed facts and (2) mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Jones v. State*, 437 S.W.3d 536, 538 (Tex. App.—Texarkana 2014, pet. filed); *see Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Additionally, we review de novo the trial court's application of the law of search and seizure to the trial court's express or implied determination of historical facts. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). Finally, we review de novo indisputable evidence contained in a video recording. *State v. Duran*, 396 S.W.3d 563, 570–71 (Tex. Crim. App. 2013); *see Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000).

## III.  DISCUSSION

We begin our discussion with a general overview of the Fourth Amendment. We then analyze whether Hodges had reasonable suspicion that appellant committed the traffic violation of failing to yield the right of way. Finally, we analyze whether the warrantless intrusion into appellant's veins was justified under an exception to the Fourth Amendment's warrant requirement.

5

## A. The Fourth Amendment

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The ultimate touchstone of the Fourth Amendment is reasonableness. *Riley v. California*, — U.S. —, —, 134 S. Ct. 2473, 2482 (2014). Reasonableness generally requires the obtaining of a judicial warrant. *Id.* A warrantless search is reasonable only if it falls within a specific exception to the Fourth Amendment's warrant requirement. *Id.*

A defendant who alleges a search or seizure in violation of the Fourth Amendment must produce some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). To satisfy this burden, the defendant must establish that the search or seizure occurred without a warrant. *Id.* Once the defendant makes this showing, the State must prove that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* Here, the State seized and searched appellant without a warrant. Therefore, we must determine whether the warrantless temporary detention of appellant was reasonable and, if so, whether the warrantless intrusion into appellant's veins was reasonable.

## B. The traffic stop was reasonable.

The warrantless temporary detention of appellant was reasonable. A warrantless temporary detention, such as the traffic stop in this case, is lawful when the officer has reasonable suspicion to believe that an individual is violating the law. *Ford*, 158 S.W.3d at 492. Reasonable suspicion exists if the officer has

6

specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a person has engaged, is engaging, or soon will be engaging in criminal activity. *Abney*, 394 S.W.3d at 548. This objective standard disregards the officer's subjective intent and looks solely at whether an objective basis for the detention exists. *Ford*, 158 S.W.3d at 492. A reasonable-suspicion determination is made by considering the totality of the circumstances at the time of the detention and must be based on commonsense judgments and inferences about human behavior. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000); *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011).

In this case, Hodges testified that he stopped appellant for failing to yield the right of way. In order to satisfy its burden, the State was required to show that Hodges had a reasonable suspicion that appellant violated section 545.155 of the Texas Transportation Code by failing to yield the right of way. *See Abney*, 394 S.W.3d at 548.

Section 545.155 provides that "[a]n operator about to enter or cross a highway from an alley, building, or private road or driveway shall yield the right-of-way to a vehicle approaching on the highway to be entered." Tex. Transp. Code Ann. § 545.155 (West 2011). The undisputed evidence showed the following:

- Hodges was driving eastbound in the right lane of West Main Street.
- Appellant was driving through a parking lot at a high rate of speed.
- Appellant's trajectory was perpendicular to that of Hodges.
- Appellant was approaching West Main Street from the south.
- Appellant's SUV stopped suddenly, causing its weight to visibly shift forward and its front suspension to compress.
- The front end of appellant's SUV entered Hodges's lane.
- Hodges had to slam on his brakes in order to avoid colliding with the SUV.
  Based on the totality of these circumstances, we conclude that Hodges had

7

reasonable suspicion that appellant committed the traffic violation of failing to yield the right of way. The record indicates that appellant did not yield the right of way to Hodges. Specifically, appellant allowed the front end of his SUV to enter the highway from the apartment complex's driveway when Hodges was approaching on the highway to be entered, namely West Main Street. *See id.*; *see, e.g.*, *Thomas v. State*, 336 S.W.3d 703, 708–09 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (traffic stop for failing to yield right of way was justified when defendant's abrupt turn forced officer to apply brakes in order to avoid a collision).

The trial court did not err in denying appellant's motion to suppress. Appellant's first issue is overruled.

## C. The State's drawing of appellant's blood without a warrant was not reasonable because the State failed to establish a recognized exception to the Fourth Amendment's warrant requirement.

The State's drawing of appellant's blood without a warrant was not reasonable. The State failed to establish a recognized exception to the Fourth Amendment's warrant requirement.[3] A blood draw conducted at the direction of the police is a search subject to the reasonableness requirement of the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767 (1966). A warrantless search of the person is unreasonable unless it falls within a recognized exception to the warrant requirement. *McNeely*, 133 S. Ct. at 1558. Voluntary consent to search

---

[3] To the extent appellant asks us to decide the constitutionality of the implied-consent statute, we decline his invitation. "The constitutionality of a statute is not to be determined in any case unless such a determination is absolutely necessary to decide the case in which the issue is raised." *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 909 (Tex. Crim. App. 2011) (quoting *Briggs v. State*, 740 S.W.2d 803, 806–07 (Tex. Crim. App. 1987)). Because section 724.012(b)(3)(B) is not a recognized exception to the Fourth Amendment's warrant requirement and because the State did not satisfy its burden to establish a recognized exception to the warrant requirement, we conclude that appellant's Fourth Amendment rights were violated. Therefore, it is not "absolutely necessary" for us to decide whether section 724.012(b)(3)(B) is unconstitutional, either facially or as applied to appellant.

and exigent circumstances are among the recognized exceptions. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). We are persuaded by the reasoning of our sister courts of appeal and join them in concluding that the repeat-offender provision of the implied-consent statute, *see* Tex. Transp. Code Ann. § 724.012(b)(3)(B), is not one of the recognized exceptions to the warrant requirement. *State v. Anderson*, — S.W.3d —, —, No. 09-13-00400-CR, 2014 WL 5033262, at *15 (Tex. App.—Beaumont Oct. 8, 2014, no pet. h.); *Aviles v. State*, — S.W.3d —, —, No. 04-11-00877-CR, 2014 WL 3843756, at *3 (Tex. App.— San Antonio Aug. 6, 2014, pet. filed); *Forsyth v. State*, 438 S.W.3d 216, 223 (Tex. App.—Eastland 2014, pet. filed); *Sutherland v. State*, 436 S.W.3d 28, 41 (Tex. App.—Amarillo 2014, pet. filed); *Weems v. State*, 434 S.W.3d 655, 665 (Tex. App.—San Antonio 2014, pet. granted); *Reeder v. State*, 428 S.W.3d 924, 930 (Tex. App.—Texarkana 2014, pet. granted); *State v. Villareal*, — S.W.3d —, —, No. 13-13-00253-CR, 2014 WL 1257150, at *11 (Tex. App.—Corpus Christi Jan. 23, 2014, pet. granted).

Therefore, the State was required to prove that the warrantless intrusion into appellant's veins was justified by exigent circumstances or valid consent.[4]

### 1.    *The drawing of appellant's blood without a warrant was not justified by exigent circumstances.*

The State has not met its burden to establish the exigent circumstances exception to the warrant requirement. At the hearing on appellant's motion for new trial, the State acknowledged that, under *McNeely*, "it is not a per se exception to the general warrant requirement . . . that alcohol naturally dissipates in the blood stream." The State argues, however, that exigent circumstances did justify the

---

[4] The State has not argued that any other recognized exception to the warrant requirement applies to this case.

9

warrantless blood draw in this case. The State avers that two hours elapsed from the time of the traffic stop to the time that appellant's blood was drawn. The State contends that the additional time needed to acquire a warrant threatened the destruction of the evidence of appellant's blood alcohol content. The State's position is untenable because it is not supported by evidence in the record.

The exigent circumstances exception applies "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *McNeely*, 133 S. Ct. at 1558 (quoting *Kentucky v. King*, — U.S. —, —, 131 S. Ct. 1849, 1856 (2011)). The State has a compelling need to prevent the imminent destruction of evidence. *Id.* A law enforcement officer may conduct a search without a warrant if, under the circumstances, the delay necessary to obtain a warrant threatens the destruction of evidence. *Schmerber*, 384 U.S. at 770.

We must look to the totality of the circumstances as set forth in the record to determine whether the officer faced an exigency that justified acting without a warrant. *McNeely*, 133 S. Ct. at 1559. However, "in order to establish a plausible justification for an exigent circumstances exception to the warrant requirement, the State ha[s] the burden to show facts and circumstances beyond the passage of time and the resulting dissipation of alcohol in the bloodstream." *Douds v. State*, 434 S.W.3d 842, 851 (Tex. App.—Houston [14th Dist.] 2014, pet. granted) (en banc, op. on reh'g).

Here, the State has not shown or articulated any facts supporting the existence of an exigency beyond the passage of time and the resulting dissipation of alcohol in the bloodstream. The record shows that Hodges initiated the traffic stop just after 2:00 a.m. on April 2, 2012. Hodges arrested appellant at 2:46 a.m. The nurse drew appellant's blood at 4:20 a.m. Although Hodges testified that he

was aware that he could obtain a blood-draw warrant, the record contains no evidence that he attempted to acquire such a warrant. Additionally, the record contains no evidence regarding what Hodges knew about the time needed to obtain a warrant. The State presented no evidence that further delay to obtain a warrant threatened the destruction of evidence. The only evidence of an exigency in this case is the two hours that elapsed from the time of the traffic stop to the time of the warrantless blood draw and the resulting dissipation of alcohol in appellant's blood stream.

Even though findings of historical fact supported by the record must be implied in favor of the trial court's ruling, whether those facts meet the legal standard of exigent circumstances is a legal question we review de novo. *Douds*, 434 S.W.3d at 855. The findings that can be implied on this record do not support the conclusion that the delay necessary to obtain a warrant threatened the imminent destruction of the evidence of appellant's blood alcohol content.

Nor does the record support the dissent's position that appellant posed a risk similar to that of a suspected terrorist in a highly crowded airport. Here, appellant was in police custody and no longer a threat to anyone on the public roadways. This is in marked contrast to the would-be "air pirate" in the "zone of danger." The warrantless search in this case was for evidence of intoxication, not for weapons or implements of mass destruction that could still be used. Further, the dissent advances an argument that was not advanced by the State at trial or on appeal.[5]

---

[5] We also note that courts deciding the validity of searches at airports after the 9/11 terrorist attacks have eschewed the notion that searches at airports are justified by consent. *See United States v. Aukai*, 497 F.3d 955, 960–61 (9th Cir. 2007) (en banc) (overruling prior cases that predicated the reasonableness of airport screening on ongoing consent or irrevocable implied consent; "[G]iven that consent is not required, it makes little sense to predicate the reasonableness of an administrative airport screening search on an irrevocable implied consent theory."); *see also Corbett v. Transp. Sec. Admin.*, 767 F.3d 1171, 1180 (11th Cir. 2014)

The State has not met its burden to establish that exigent circumstances justified the warrantless search into appellant's veins.

### 2. *The drawing of appellant's blood without a warrant was not justified by valid consent.*

The State next contends, "It is well settled that one of the established exceptions to a warrant requirement is a search pursuant to consent." The State equates statutory implied consent with the recognized consent exception to the Fourth Amendment's warrant requirement. The State's position is that a suspect with two prior DWI convictions has irrevocably consented to a mandatory warrantless blood draw. We disagree and conclude that, under the totality of the circumstances in the record, the State has not met its burden to establish that the warrantless search into appellant's veins was justified by valid consent.[6]

### a. *Consent under the Fourth Amendment*

Under the Fourth Amendment, a warrantless search authorized by consent is wholly valid. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Like searches

---

(describing airport search as administrative search rather than consent search); *George v. Rehiel*, 738 F.3d 562, 575 (3d Cir. 2013) (noting that airport screening was permissible under administrative search doctrine); *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 653 F.3d 1, 10 (D.C. Cir. 2011) (screening passengers at an airport is an administrative search). In fact, Texas courts have held that travelers who attempt to board a commercial aircraft or check their baggage lack standing to challenge the search because they do not have a reasonable expectation of privacy. *E.g.*, *Kjolhede v. State*, 333 S.W.3d 631, 633–34 (Tex. App.—Dallas 2009, pet. ref'd); *Turner v. State*, 132 S.W.3d 504, 507–08 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd); *see also Florida v. J.L.*, 529 U.S. 266, 274 (2000) (reasonable expectation of privacy is diminished at airports). In a post-9/11 world, a person's submission to administrative airport screening has little to do with his or her consent, implied or otherwise. The dissent's effort to justify a per se rule of irrevocable consent by comparing a warrantless blood draw to an administrative search at an airport is unconvincing.

[6] Like the First Court of Appeals in *Perez v. State*, we do not consider the constitutionality of the implied-consent statute. *See* — S.W.3d —, —, No. 01-12-01001-CR, 2014 WL 943126, at *7 (Tex. App.—Houston [1st Dist.] Mar. 11, 2014, no pet.); *supra* note 3. Rather, we must decide an issue not addressed in *Perez*—whether such implied consent can be revoked.

12

justified by consent in other contexts, "consent to a blood test must be free and voluntary, and it must not be the result of physical *or* psychological pressures brought to bear by law enforcement." *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012). A person's consent is not voluntary if his will was overborne and his capacity for self-determination was critically impaired. *See Schneckloth*, 412 U.S. at 225–26; *Fienen*, 390 S.W.3d at 333.

Moreover, a person is free to limit the scope of or even revoke the consent that was given. *Florida v. Jimeno*, 500 U.S. 248, 252 (1991); *Valtierra v. State,* 310 S.W.3d 442, 450 (Tex. Crim. App. 2010). If a person withdraws his or her consent before the search is completed, the police cannot continue searching based on the prior consent. *See, e.g.*, *Mason v. Pulliam*, 557 F.2d 426, 429 (5th Cir. 1977) (citizen's withdrawal of consent and reinvocation of Fourth Amendment rights did not affect validity of IRS agent's actions prior to receiving notice of citizen's withdrawal of consent). A suspect's ability to withdraw his or her consent is particularly important in cases like this one that involve a compelled intrusion into the human body. *See McNeely*, 133 S. Ct. at 1565 ("We have never retreated . . . from our recognition that any compelled intrusion into the human body implicates significant, constitutionally protected privacy interests.").

It is the State's burden to show valid consent by clear and convincing evidence. *Fienen*, 390 S.W.3d at 333. The question of whether a person's consent was valid is one of fact to be determined from the totality of the circumstances and from the point of view of the objectively reasonable person. *Id.* "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251. One of the factors in determining the validity of a search based on

consent is whether the suspect had the option to withdraw his or her consent. *Flores v. State*, 172 S.W.3d 742, 749 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

An officer's invocation of section 724.012(b)(3)(B) is not alone sufficient to establish the existence of valid consent justifying a warrantless blood draw. In *McNeely*, the Supreme Court rejected the state's argument that "whenever an officer has probable cause to believe an individual has been driving under the influence of alcohol, exigent circumstances will necessarily exist because [blood alcohol content] evidence is inherently evanescent." *McNeely*, 133 S. Ct. at 1560. The Court held that the dissipation of alcohol in the blood does not categorically support a finding of exigency and reiterated that "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *Id.* at 1563. Here, the State's position is similar to that of the state in *McNeely*: whenever a person has been arrested for DWI and is a repeat offender, consent will necessarily exist because section 724.012(b)(3)(B) says it does. Like the *McNeely* Court, we reject the State's argument in favor of a categorical rule supporting a finding of irrevocable consent and instead reiterate that whether a warrantless blood test of a drunk-driving suspect is reasonable under the Fourth Amendment must be determined case by case based on the totality of the circumstances. Therefore, in this case, we must look at the facts and circumstances beyond application of section 724.012(b)(3)(B) to determine whether the search into appellant's veins was justified by valid consent.

### b.    *Implied Consent*

Generally, implied-consent statutes require motorists, as a condition of operating a motor vehicle within the state, to consent to blood alcohol content

testing if they are arrested or detained on suspicion of drunk driving. *McNeely*, 133 S. Ct. at 1566. Implied-consent statutes do not generally authorize searches; instead, they authorize the police to require motorists to choose between giving actual consent or withdrawing their "implied consent" and suffering the consequences. *State v. Padley*, 849 N.W.2d 867, 880 (Wis. Ct. App. 2014); *see McNeely*, 133 S. Ct. at 1566. A suspect who consents when presented with the choice has given actual consent, but a suspect who refuses to consent withdraws the statutorily "implied consent" and accepts the consequences of that choice. *Padley*, 849 N.W.2d at 879. In this respect, choosing to submit a breath or blood specimen rather than accepting the consequences of refusal is valid consent under the Fourth Amendment. *See McGautha v. California*, 402 U.S. 183, 213 (1971) ("The criminal process . . . is replete with situations requiring 'the making of difficult judgments' as to which course to follow. Although a defendant may have a right . . . to follow whichever course he chooses, the Constitution does not . . . always forbid him to choose." (citations omitted)), *vacated on other grounds sub nom*, *Crampton v. Ohio*, 408 U.S. 941 (1972); *Cantu v. State*, 738 S.W.2d 249, 256 (Tex. Crim. App. 1987) ("No constitutional violation is presented by the fact of a difficult decision for a defendant.").

The Texas implied-consent statutory scheme is similar to the general model. In Texas, "implied consent" means that a person arrested for DWI is deemed to have consented to the taking of one or more specimens of the person's breath or blood for analysis to determine alcohol concentration. Tex. Transp. Code Ann. § 724.011 (West 2011). A specimen can only be taken if the person agrees to an officer's request for one, unless the provisions of 724.012(b) apply. *Id.* § 724.013 (West 2011). If a person refuses an officer's request to submit a specimen, the Department of Public Safety must immediately suspend the person's driver's

license. *Id.* § 724.035 (West 2011). At issue in this case is section 724.012(b)(3)(B) of the Transportation Code, the repeat-offender provision of the implied-consent statute. This provision requires an officer to take a specimen of a person's breath or blood if (1) the officer arrests the person for DWI, (2) the person refuses the officer's request to submit a specimen voluntarily, and (3) at the time of arrest, the officer possesses or receives reliable information from a credible source that the person has been previously convicted of DWI on two or more prior occasions. *Id.* § 724.012(b)(3)(B).

### c. Analysis

Applying the Fourth Amendment standards, the applicable provisions of Texas's implied-consent statute, and the appropriate standard of review, we conclude the State has not carried its burden to prove the existence of valid consent in this case. We acknowledge that the record supports a finding that the statutory requirements for a mandatory blood draw were met. Appellant was arrested for DWI and was deemed by the implied-consent statute to have consented to submitting a specimen of his breath or blood. Because appellant had been convicted of DWI on two prior occasions and refused to submit a blood specimen voluntarily, Hodges was required by the mandatory blood draw provision of the implied-consent statute to obtain a specimen of appellant's breath or blood. Furthermore, appellant stipulated to the prior convictions at trial and does not contest that Hodges complied with the statute by requiring him to submit to the taking of a blood specimen.

The record supports a finding that appellant effectively withdrew his implied consent. Hodges testified that appellant refused consent to the blood draw. After discovering appellant's two prior DWI convictions, Hodges took appellant to the hospital for the mandatory blood draw. At this point, the record indicates that

16

appellant physically resisted to the taking of his blood. Specifically, three people had to hold appellant down so the nurse could complete the blood-draw procedure. The explicit refusal coupled with the physical refusal to submit to the taking of a blood specimen effectively withdrew appellant's prior implied consent. *See Jimeno*, 500 U.S. at 251 (scope of consent is determined by what a reasonable person would have understood by the exchange between the officer and the suspect). Despite this withdrawal of consent and without obtaining a warrant, Hodges forced appellant to submit a blood specimen. Hodges's only justification for mandating the warrantless blood draw was his application of section 724.012(b)(3)(B).

The totality of the circumstances in this case demonstrates that appellant withdrew his consent prior to the warrantless blood draw. In light of appellant's withdrawal of consent and because the State's only justification for conducting the warrantless nonconsensual blood draw was the repeat-offender provision of the implied-consent statute, we conclude the State has not met its burden to establish the existence of valid consent justifying the warrantless blood draw.

In reaching this conclusion, we recognize the apparent inconsistency between deemed consent under the implied-consent statute and a person's absolute right to refuse a test. *See Fienen*, 390 S.W.3d at 332–33. The Court of Criminal Appeals has explained this inconsistency: "[C]onsent being implied by law, a driver may not legally refuse. A driver, however, can physically refuse to submit, and the implied-consent law, recognizing that practical reality, forbids the use of physical force to compel submission." *Id.* at 333 (quoting *Forte v. State*, 759 S.W.2d 128, 138 (Tex. Crim. App. 1988), *overruled on other grounds*, *McCambridge v. State*, 778 S.W.2d 70 (Tex. Crim. App. 1989) (internal quotations omitted)). Although the repeat-offender provision of the implied-consent statute

17

was not at issue in the *Fienen* court's analysis, *see* 390 S.W.3d at 333, the Supreme Court's recent abolition of categorical rules justifying exceptions to the warrant requirement persuades us that the use of physical force to compel submission, particularly in the face of physical resistance, is equally forbidden when the repeat-offender provision is at issue in the court's analysis, as it is in this case. *See McNeely*, 133 S. Ct. at 1563; *see also Aviles v. Texas*, — U.S. —, —, 134 S. Ct. 902, 902 (2014) (remanding, for consideration in light of *McNeely*, factually similar case involving repeat-offender provision of implied-consent law); *Tex. Dept. of Pub. Safety v. Watson*, 945 S.W.2d 262, 266 (Tex. App.—Houston [1st Dist.] 1997, no pet.) ("[A] person cannot be forced to breathe into a breathalyzer or have a needle with syringe forcibly poked into his arm."). Were it otherwise, we would be creating a per se exception to the warrant requirement for DWI repeat offenders. As the United States Supreme Court made clear in *McNeely*, this we cannot do. [7]

We are not persuaded by the State's argument that, by citing favorably to

---

[7] We acknowledge, as does the dissent, that "the permissibility of a particular practice 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'" *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 619 (1989) (quoting *Delaware v. Prouse*, 440 U.S. 648, 654 (1979)). However, in this case, the balance of the State's interests in eradicating the drunken driving problem against the individual's constitutionally-protected interest in his or her bodily integrity undermines the dissent's position in favor of irrevocable consent based solely on the individual's status as a repeat offender.

The drunken driving problem is a national epidemic, and the State has an important interest in eradicating it. *See McNeely*, 133 S. Ct. at 1565. The State also has an interest in protecting law-abiding drivers from drunk drivers. But when balanced against the serious bodily intrusion necessitated by a warrantless mandatory blood draw, we conclude that the State's interests are sufficiently served by the provision in the Transportation Code mandating immediate suspension of a person's driver's license when the person refuses to submit to a blood draw, or, in the case of a person without a license, issuance of an order denying the issuance of a license to that person. *See* Tex. Transp. Code Ann. § 724.035(a) (West 2011). Furthermore, in this case, appellant was in custody. He no longer posed a threat to public safety. And nothing in the record suggests that Hodges was prevented from obtaining a warrant.

18

implied-consent statutes throughout the country, the *McNeely* Court endorsed the use of implied-consent statutes as a means to justify the warrantless intrusion into a nonconsenting suspect's veins. The Court's statement that implied-consent laws "impose significant consequences when a motorist withdraws consent" presupposes that a motorist has the right to withdraw his or her consent. *McNeely*, 133 S. Ct. at 1566; *see Forsyth*, 438 S.W.3d at 222 ("The Court's language does suggest . . . that an accused can withdraw his or her consent to submit a specimen for testing in direct contradiction to the State's argument that implied consent is irrevocable."); *see also* Tex. Transp. Code Ann. § 724.035(a) (West 2011) (providing for immediate suspension of license upon a person's refusal to submit to the taking of a specimen).[8] Furthermore, while "a majority of States either place significant restrictions on when the police officers may obtain a blood sample despite a suspect's refusal (often limiting testing to cases involving an accident resulting in death or serious bodily injury) or prohibit nonconsensual blood tests altogether," *McNeely*, 133 S. Ct. at 1566, Texas is the only state that purports to allow police officers to forcibly draw a DWI suspect's blood without a warrant based solely on the suspect's status as a repeat offender.[9] Lastly, the State's

---

[8] Justice Sotomayor's discussion of implied-consent laws, which the State is using as the basis for its argument, was not joined by a majority of the Court. *See Forsyth*, 438 S.W.3d at 222 n.3.

[9] We do note that Nevada's and Ohio's implied-consent schemes seem to allow officers to use "reasonable force" or "whatever reasonable means are necessary" to obtain samples from a person who refuses. Like the Texas statute, however, neither the Nevada nor the Ohio statute precludes an officer from first obtaining a warrant. *See, e.g.*, Ala. Code §§ 32-5-192, 32-5-200 (Westlaw); Alaska Stat. Ann. § 28.35.032 (Westlaw); Ariz. Rev. Stat. Ann. §§ 28-1321, 28-1388 (Westlaw); Ark. Code Ann. §§ 5-65-202, 5-65-205 (Westlaw); Cal. Veh. Code §§ 13353, 23612 (Westlaw); Colo. Rev. Stat. Ann. §§ 42-4-1301, 42-4-1301.1 (Westlaw); Conn. Gen. Stat. Ann. §§ 14-227b, 14-227c (Westlaw) (amended 2014); Del. Code Ann. tit. 21, §§ 2740, 2741 (Westlaw); Fla. Stat. Ann. § 316.1932 (Westlaw); Ga. Code Ann. § 40-5-67.1 (Westlaw); Haw. Rev. Stat. §§ 291E-15, 291E-21 (Westlaw); Idaho Code Ann. § 18-8002 (Westlaw); 625 Ill. Comp. Stat. Ann. 5/11-501.1, 5/11-501.6 (Westlaw); Ind. Code Ann. §§ 9-30-6-1, 9-30-6-3, 9-30-6-7 (Westlaw); Iowa Code Ann. §§ 321J.6, 321J.9, 321J.10A (Westlaw); Kan. Stat. Ann. §§

position fails to acknowledge that an officer who obtains a blood-draw warrant can still comply with the "shall require" language of section 724.012(b) while at the same time not running afoul of the Fourth Amendment. *See McGruder v. State*, — S.W.3d —, —, No. 10-13-00109-CR, 2014 WL 3973089, at \*3 (Tex. App.—Waco Aug. 14, 2014, pet. filed) ("[S]ection 724.012(b) does not require a blood or breath specimen be taken contrary to the Fourth Amendment; that is, without a warrant or without a recognized exception to the warrant requirement.")

Nor are we persuaded by the State's reliance on dictum in *Beeman v. State* describing the implied-consent statute as "another method of conducting a constitutionally valid [warrantless] search." 86 S.W.3d 613, 615 (Tex. Crim. App. 2002). First, a statute cannot authorize what the Constitution forbids. *State v. Mosely*, 348 S.W.3d 435, 442 (Tex. App.—Austin 2011, pet. ref'd).

Second, the San Antonio Court of Appeals relied on the *Beeman* dictum in

---

8-1001, 8-1002 (Westlaw); Ky. Rev. Stat. Ann. §§ 189A.103, 189A.105, 189A.107 (Westlaw); La. Rev. Stat. Ann. §§ 32:661, 32:666 (Westlaw); Me. Rev. Stat. Ann. tit. 29-A, § 2521 (Westlaw); Md. Code Transp. Ann. § 16-205.1 (Westlaw); Mass. Gen. Laws ch. 90, § 24 (Westlaw); Mich. Comp. Laws. Ann. §§ 257.625c, 257.625d (Westlaw); Minn. Stat. Ann. §§ 169A.51, 169A.52 (Westlaw); Miss. Code Ann. §§ 63-11-5, 63-11-8, 63-11-21 (Westlaw); Mo. Rev. Stat. §§ 577.033, 577.041 (Westlaw) (amended 2014); Mont. Code Ann. § 61-8-402 (Westlaw); Neb. Rev. Stat. Ann. §§ 60-6,197, 60-6,210, 60-498.01 (Westlaw); Nev. Rev. Stat. Ann. §§ 484C.150, 484C.160 (Westlaw) (permitting use of "reasonable force" under certain circumstances when a person refuses); N.H. Rev. Stat. Ann. § 265-A:14 (Westlaw); N.J. Stat. Ann. §§ 39:4-50.2, 39:4-50.4a (Westlaw); N.M. Stat. Ann. § 66-8-111 (Westlaw); N.Y. Veh. & Traf. Laws § 1194 (Westlaw); N.C. Gen. Stat. Ann. § 20-16.2 (Westlaw); N.D. Cent. Code Ann. §§ 39:20-01, 39:20-01.1, 39:20-04 (Westlaw); Ohio Rev. Code Ann. § 4511.191 (Westlaw) (allowing officer to employ "whatever reasonable means are necessary" to ensure submission; providing officers with criminal and civil immunity); Okla. Stat. Ann. tit. 47, § 753 (Westlaw); Or. Rev. Stat. Ann. §§ 813.095, 813.100 (Westlaw); 75 Pa. Cons. Stat. Ann. § 1547 (Westlaw); R.I. Gen. Laws Ann. § 31-27-2.1 (Westlaw) (amended 2014); S.C. Code Ann. §§ 56-5-2950, 56-5-2951 (Westlaw) (amended by 2014 S.C. Act 158); S.D. Codified Laws §§ 32-23-1, 32-23-10 (Westlaw) (officer can "require" suspect arrested for DWI to submit); Tenn. Code Ann. § 55-10-406 (Westlaw); Utah Code Ann. §§ 41-6a-520, 41-6a-524 (Westlaw); Vt. Stat. Ann. tit. 23, § 1202 (Westlaw); Va. Code Ann. §§ 18.2-268.2, 18.2-268.3 (Westlaw) (refusal is a separate crime); Wash. Rev. Code Ann. § 46.20.308 (Westlaw); W. Va. Code Ann. § 17C-5-7 (Westlaw); Wis. Stat. Ann. § 343.305 (Westlaw); Wyo. Stat. Ann. § 31-6-102 (Westlaw).

*Aviles v. State*, 385 S.W.3d 110 (Tex. App.—San Antonio 2012), *vacated*, 134 S. Ct. 902 (2014), a factually similar case involving section 724.012(b)(3)(B). There, the San Antonio court held that section 724.012(b)(3)(B) permits an officer to take a blood specimen from a DWI suspect without a warrant if the officer has information that the suspect has been previously convicted of DWI on at least two prior occasions. *Aviles*, 385 S.W.3d at 116. The Supreme Court vacated the San Antonio court's judgment and remanded the case for consideration in light of *McNeely*. *Aviles*, 134 S. Ct. at 902. The San Antonio court recently issued a new opinion in *Aviles*, rejecting its earlier reliance on the *Beeman* dictum and holding that section 724.012(b)(3)(B) is not a permissible exception to the warrant requirement. 2014 WL 3843756, at *3.[10] The Supreme Court's remand of *Aviles* suggests that section 724.012(b)(3)(B) cannot serve as the sole basis for mandating a warrantless blood draw when the totality of the circumstances surrounding the blood draw indicate a lack of valid consent.

Additionally, *Beeman* is distinguishable. The officer in *Beeman* arrested the defendant for DWI and obtained a warrant to draw his blood. 86 S.W.3d at 614. The defendant, who refused a breath test and objected to the blood draw, argued that the search was invalid because it violated the implied-consent statute—i.e., he revoked his consent. *Id.* at 615. The court held that "once a valid search warrant is

---

[10] *See also Forsyth*, 438 S.W.3d at 221 (declining to rely on *Beeman* for proposition that implied consent is a valid exception to the warrant requirement); *Sutherland*, 436 S.W.3d at 35–36 (discussing *Beeman* in the context of the remand of *Aviles*); *Weems*, 434 S.W.3d at 660–61 (same); *Reeder*, 428 S.W.3d at 928 (noting the Supreme Court's remand of *Aviles* casts "grave doubt" on the reasoning of *Beeman*); *Villareal*, — S.W.3d at —, 2014 WL 1257150, at *11 (noting the *Beeman* court recognized that implied-consent laws do not give police officers anything more than what the Constitution already gives them). *But see Perez*, 2014 WL 943126, at *6–*7 (relying solely on *Beeman* dictum in a section 724.012(b)(3)(B) case to justify warrantless blood draw; providing no discussion of or citation to cases rejecting *Beeman* dictum); *Kay v. State*, No. 01-13-00595-CR, 2014 WL 3697917, at *2 (Tex. App.—Houston [1st Dist.] July 24, 2014, no pet.) (mem. op., not designated for publication) (same).

obtained[,] . . . consent, implied or explicit, becomes moot." *Id.* at 616. Here, in contrast, Hodges never obtained a warrant and relied solely on the repeat-offender provision of the implied-consent statute to justify the forced blood draw. The totality of the circumstances surrounding appellant's consent, and his effective withdrawal of consent, is therefore not moot; to the contrary, it is of utmost importance in assessing the reasonableness of the search under the Fourth Amendment. For these reasons, we conclude that the State's reliance on *Beeman* for the proposition that section 724.012(b)(3)(B) permits the warrantless blood draw from a DWI suspect who has effectively withdrawn his implied consent is not persuasive.

Finally, the dissent suggests that appellant is similar to the defendant in *United States v. Knights*, 534 U.S. 112 (2001). The facts of this case, however, are distinguishable. In *Knights*, the defendant was on probation and agreed in writing to submit his person, property, place of residence, vehicle, and personal effects to search at any time, with or without a search warrant, warrant of arrest, or reasonable cause by any probation officer or law enforcement officer. 534 U.S. at 114. Here, in contrast, the record contains no evidence to suggest that appellant was on probation when the offense occurred, or that he agreed in writing to submit to a warrantless search by probation officials or anyone else. Appellant was not searched as a condition of probation. Furthermore, searches such as the one in *Knights* are viewed in a different context because probation (and parole) is considered an extension of incarceration. *See id.* at 119 ("Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." (internal quotations omitted)). Nothing in the record before us suggests that appellant was subject to some sort of "conditional liberty" as contemplated in *Knights*. Nor did the State assert at trial or on appeal that the

search of appellant was based on such an exception.

In sum, appellant withdrew his implied consent when he refused to submit to the blood draw, and the State, in spite of appellant's physical resistance, forcibly poked a syringe into his arm and drew his blood anyway. Given the absence of a warrant, the absence of exigent circumstances, and the absence of valid consent, we conclude the State did not establish that the nonconsensual warrantless intrusion into appellant's veins was reasonable under the Fourth Amendment or that a recognized exception to the Fourth Amendment's warrant requirement applied to this case. The trial court erred when it overruled appellant's motion for new trial.

### 3. *The trial court's error in overruling appellant's motion for new trial was harmful.*

Having concluded that the trial court erred, we next determine whether the trial court's error resulted in harm. In the face of constitutional error, we must reverse the judgment of conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a); *Holmes v. State*, 323 S.W.3d 163, 173–74 (Tex. Crim. App. 2010) (op. on reh'g). In this case, the blood evidence seized from appellant was inculpatory and was used against appellant at trial. Specifically, evidence of appellant's blood alcohol content, which exceeded the legal limit by nearly a factor of three, was presented at trial. We cannot determine beyond a reasonable doubt that the State's use of the evidence of appellant's blood alcohol content did not contribute to appellant's conviction. *See Holmes*, 323 S.W.3d at 174. This indicates that the trial court's erroneous ruling was indeed a contributing factor in appellant's conviction and punishment. Therefore, the error was harmful.

Appellant's second issue is sustained.

## IV.    CONCLUSION

Because the traffic stop in this case was reasonable, the trial court did not err when it denied appellant's motion to suppress. We overrule appellant's first issue. With regard to appellant's second issue, the State did not carry its burden to prove a recognized exception to the Fourth Amendment's warrant requirement. We sustain appellant's second issue and hold that the drawing of appellant's blood without a search warrant violated the Fourth Amendment. The trial court erred in denying appellant's motion for new trial. Because the evidence of appellant's blood alcohol content was inculpatory, we conclude it contributed to his guilt. *See id.* We therefore reverse the trial court's judgment and remand to the trial court for a new trial consistent with this opinion.


/s/    Marc W. Brown
Justice


Panel consists of Chief Justice Frost and Justices Donovan and Brown. (Frost, C.J., dissenting).
Publish — TEX. R. APP. P. 47.2(b).