**AFFIRMED; Opinion Filed June 9, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00483-CR

### JUSTIN COOK, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court No. 9**
**Dallas County, Texas**
**Trial Court Cause No. MA12-46238-K**

## MEMORANDUM OPINION

Before Justices Myers, Evans, and Brown
Opinion by Justice Myers

Appellant Justin Cook was charged by information with driving while intoxicated. He filed a pretrial motion to suppress evidence; the trial court held a hearing and denied the motion. In accordance with the negotiated plea agreement, the trial court subsequently sentenced appellant to 150 days in jail, suspended imposition of the sentence, placed appellant on fifteen months' community supervision, and assessed a $1000 fine. In one issue, appellant contends the trial court erred by denying the pretrial motion to suppress. We affirm.

### BACKGROUND AND PROCEDURAL HISTORY

On October 7, 2012, Officer Richard Conklin of the Richardson Police Department arrested appellant for DWI following a traffic stop. Officer Conklin testified that once appellant was arrested and transported to the Richardson Jail, he was read "the statutory warning." Although Officer Conklin typically used the 2011 version of the form DIC–24 that contained the

statutory warnings due a suspect, he testified that the statutory warnings he orally read and provided to appellant on this occasion were from the 2005 version of the DIC–24 form. When asked about the difference between the 2005 and 2011 forms, the officer stated that the 2005 version of the form did not include the warning that "[i]f you refuse to give a specimen, the officer may request a warrant authorizing a specimen to be taken from you," which was added in a 2011 amendment to the statue. *See* TEX. TRANSP. CODE ANN. § 724.015(3). The State then asked:

> Q. Okay. When you handed a copy of this warning to the defendant and read it to him, did the defendant indicate that he understood these warnings?
>
> A. He did.
>
> Q. After the defendant indicated he understood these warnings, did he choose to provide a breath specimen?
>
> A. He did.
>
> Q. And so he consented to a breath test?
>
> A. Yes, sir, he did.
>
> Q. This was completely voluntary?
>
> A. Yes, sir.

The officer testified that another officer administered the Intoxilyzer test and obtained the test results. Officer Conklin was not aware of anything that would have caused the test results to be invalid.

Officer Conklin again testified on cross-examination that he was aware of the 2011 change to the statutory warnings, and that the 2011 version of the form included the language found in section 724.015(3). *See id.* He testified that he did not read appellant the language in section 724.015(3) because that provision was not included in the version of the form he had in his possession at the time of appellant's arrest. Defense counsel then asked, "Did you at any time, other than what we have heard you testify to, warn Mr. Cook that if he refused to submit to

the taking of a specimen, you might apply or you may apply for a warrant authorizing a specimen to be taken from him?" Conklin replied, "Not that I recall, sir, no." He testified that, as far as he knew, he had always read and provided the 2011 version of the statutory warnings to DWI suspects. He explained, "In the jail where we have the forms, there, obviously, was a 2005 version somewhere laying in that stack of papers that I must have grabbed, and just out of the habit of reading the statutory warning so many times . . . I didn't realize that it was the 2005 version."

## DISCUSSION

In his issue, appellant argues the trial court erred by overruling his motion to suppress evidence. Specifically, he contends that, because he was not advised of all the requirements of section 724.015 of the Transportation Code before agreeing to provide a breath specimen, "there was a failure to comply with the Implied Consent Law which precludes a finding that [appellant] consented to providing the specimen."

Section 724.015 of the Transportation Code requires an officer to provide certain information orally and in writing before requesting a specimen of a person's breath or blood for analysis to determine alcohol concentration. *See* TEX. TRANSP. CODE ANN. § 724.015. The DIC–24 form, entitled "statutory warning," is the Texas Department of Public Safety's standard form containing the written warnings required by section 724.015. *See Martin v. Department of Public Safety*, 964 S.W.2d 772, 773 (Tex. App.—Austin 1998, no pet.). It lists the warnings due a suspect under section 724.015. *Lakore v. State*, No. 07–12–00485–CR, 2014 WL 6478569, at *2 (Tex. App.—Amarillo Nov. 19, 2014, no pet.) (mem. op., not designated for publication). The following warnings are found in the 2005 version of the DIC–24 form, which Officer Conklin testified that he read and provided to appellant before requesting the breath specimen:

> If you refuse to give the specimen, that refusal may be admissible in a subsequent prosecution. Your license, permit or privilege to operate a motor vehicle will be

–3–

suspended or denied for not less than 180 days, whether or not you are subsequently prosecuted for this offense.

If you are 21 years or age or older and submit to the taking of a specimen and an analysis of the specimen shows that you have an alcohol concentration of 0.08 or more, your license, permit or privilege to operate a motor vehicle will be suspended or denied for not less than 90 days, whether or not you are subsequently prosecuted for this offense.

If you are younger than 21 years of age and have any detectable amount of alcohol in your system, your license, permit or privilege to operate a motor vehicle will be suspended or denied for not less than 60 days. However, if you submit to the taking of a specimen and an analysis of the specimen shows that you have an alcohol concentration of less than 0.08, you may be subject to criminal penalties less severe than those provided for under Chapter 49, Penal Code.

If you refuse to give the specimen, or if the specimen shows that you have an alcohol concentration of 0.08 or more, you may be disqualified from driving a commercial motor vehicle for a period of not less than one year.

You may request a hearing on the suspension or denial. This request must be received by the Texas Department of Public Safety at its headquarters in Austin, Texas, no later than 15 days after you receive or are presumed to have received notice of suspension or denial. The request can be made by written demand, fax, or other form prescribed by the Department.

*See* TEX. TRANSP. CODE ANN. §§ 724.015, 724.035, 724.061.

Appellant argues that his consent to provide a breath specimen was involuntary because the 2005 version of the DIC–24 form did not include the warning that "if the person refuses to submit to the taking of a specimen, the officer may apply for a warrant authorizing a specimen to be taken from the person." *See* TEX. TRANSP. CODE ANN. § 724.015(3). This warning was added by amendment to section 724.015 and became effective on September 1, 2011. *See* Act of May 23, 2011, 82nd Leg., R.S., ch. 674 § 1, 2011 Tex. Sess. Law Serv. 1627 (West).

A warrantless search authorized by consent is wholly valid. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). "A driver's consent to a blood or breath test must be free and voluntary, and it must not be the result of physical or psychological pressures brought to bear by law enforcement." *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012). In making this determination, the trial court must consider the totality of the circumstances. *Id.* "[N]o one

–4–

statement or action should automatically amount to coercion such that consent is involuntary—it must be considered in the totality." *Id.* The ultimate question is whether the person's "will has been overborne and his capacity for self-determination critically impaired" such that his consent to search must have been involuntary. *Schneckloth*, 412 U.S. at 225–26.

The validity of an alleged consent is a question of fact, and the State must prove voluntary consent by clear and convincing evidence. *Fienen*, 390 S.W.3d at 333. We will uphold a trial court's finding on the voluntariness of a breath test unless the ruling is clearly erroneous. *Id.* at 335. We review de novo questions of law and "mixed questions of law and fact" that do not depend upon credibility and demeanor. *See id.* When, as in this case, the trial court does not make explicit findings of fact, we must view the evidence in a light most favorable to the trial court's ruling and assume the trial court resolved any issues of historical fact or credibility consistently with its ultimate ruling. *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010).

The record in this case does not show, nor does appellant argue, that Officer Conklin threatened, intimidated, coerced, or used any type of force to secure appellant's consent to provide the breath specimen. Nor is there any question regarding the accuracy of the statutory warnings that were provided to appellant. It is true that the 2005 version of the form that Officer Conklin used did not include the section 724.015(3) warning that "if the person refuses to submit to the taking of a specimen, the officer may apply for a warrant authorizing a specimen to be taken from the person." TEX. TRANSP. CODE ANN. § 724.015(3). But if we were to conclude that appellant's consent was involuntary simply because Officer Conklin read from an older version of the DIC–24, and thereby failed to inform appellant that his refusal may result in the officer applying for a warrant that authorized the taking of a specimen of appellant's breath, we would be disregarding the proviso in *Fienen* that "no one statement or action should automatically

amount to coercion such that consent is involuntary." *Fienen*, 390 S.W.3d at 333. The voluntariness of consent must be analyzed based on *the totality of the circumstances*. *Id*. at 335. "No statement—whether it refers to the consequences of refusing a breath test, the consequences of passing or failing a breath test, or otherwise—should be analyzed in isolation because its impact can only be understood when the surrounding circumstances are accounted for." *Id*. In addition, as noted by the State, the incomplete warnings actually understated the consequences of a refusal, and there is no evidence that appellant's consent was somehow induced or coerced by Officer Conklin understating the consequence of refusal. *See Bice v. State*, No. 13–12–00154–CR, 2013 WL 123709, at *4 (Tex. App.—Corpus Christi Jan. 10, 2013, pet. ref'd) (mem. op., not designated for publication) ("Although appellant consented after he was incorrectly advised, there is no indication that the consent was induced or coerced by the officer understating the consequences of a refusal."); *see also State v. Dorr*, No. 08–13–00305–CR, 2015 WL 631033, at *2 (Tex. App.—El Paso Feb. 13, 2015, no pet.) ("[W]arning a suspected intoxicated driver that the officer may apply for a warrant to obtain a specimen if the driver refuses to consent actually makes it *more likely* that the driver will voluntarily provide the specimen.") (emphasis in original). Likewise, there is no evidence that the use of the 2005 DIC–24 had any impact on appellant's decision to consent to providing the breath specimen. Therefore, considering the totality of the circumstances, Officer Conklin's failure to fully inform appellant of the consequences of a refusal did not render appellant's consent invalid. *See Worku v. State*, No. 14–13–00047–CR, 2014 WL 1330278, at *8 (Tex. App.—Houston [14th Dist.] April 3, 2014, no pet.) (mem. op., not designated for publication) ("Although appellant consented after hearing the inaccurate warnings, that fact alone, without evidence that appellant was pressured physically or psychologically, is insufficient to invalidate an otherwise voluntary consent.") (citing *Fienen*, 390 S.W.3d at 333).

Nor are we persuaded by appellant's contention that "[i]t cannot be said that the State established that [appellant] freely and voluntarily, positively and unequivocally[,] consented to provide a specimen of his breath based on the mere reading of the Implied Consent Law warnings." The relevant question is whether, based on the totality of the circumstances, the State met its burden of proving that the defendant's consent was voluntary. *See Fienen*, 390 S.W.3d at 334–35. As we have already discussed, when viewed in the light most favorable to the trial court's ruling, the totality of the circumstances here amply demonstrate that appellant voluntarily consented to provide the breath specimen.[1]

Accordingly, we conclude that the record supports the trial court's implied finding that appellant freely and voluntarily consented to provide the specimen of his breath, and that the record shows that the warrantless seizure of appellant's breath specimen was reasonable under the Fourth Amendment. We overrule appellant's issue.[2]

We affirm the trial court's judgment.

> / Lana Myers/
> LANA MYERS
> JUSTICE

Do Not Publish
TEX. R. APP. P. 47
140483F.U05

---

[1] Appellant also cites the decision in *Leal v. State*, 452 S.W.3d 14 (Tex. App.—Houston [14th Dist.] 2014), *vacated and remanded*, 456 S.W.3d 567 (Tex. Crim. App. 2015). In *Leal*, the court of appeals held that the totality of the circumstances showed that the appellant withdrew his consent prior to the warrantless blood draw because he *physically resisted the taking of his blood and had to be restrained when the blood sample was taken*. *Id.* at 27. Moreover, given the appellant's withdrawal of consent, the State's only justification for conducting the warrantless nonconsensual blood draw was the repeat-offender provision of section 724.012(b)(3)(B), which is not at issue in the present case, and the court concluded that the State had not met its burden of establishing the existence of a valid consent justifying the warrantless blood draw. *Id.* at 27–28. The court of criminal appeals ultimately vacated the judgment of the court of appeals and remanded the case to address whether appellant preserved his claim that the warrantless blood draw violated his Fourth Amendment rights. *See Leal*, 456 S.W.3d at 568.

[2] The State argues that appellant's brief also contains a challenge to the constitutionality of the implied consent statute, and it points out that this challenge was not preserved for appellate review because appellant did not challenge the constitutionality of the statute either in his written motion to suppress or during the hearing on the motion to suppress. *See* TEX. R. APP. P. 33.1. During oral argument, appellant's counsel assured us he was not challenging the constitutionality of the implied consent statute. We, therefore, do not address the issue.



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JUSTIN COOK, Appellant

No. 05-14-00483-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court
No. 9, Dallas County, Texas
Trial Court Cause No. MA12-46238-K.
Opinion delivered by Justice Myers. Justices
Evans and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 9th day of June, 2015.