**Affirmed and Opinion filed February 19, 2015.**



**In The**

## Fourteenth Court of Appeals

---

### NO. 14-13-00829-CR

---

### MOISES DONJUAN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Cause No. 12-CR-2473**

---

### O P I N I O N

A jury convicted appellant Moises Donjuan of felony driving while intoxicated[1] and assessed his punishment at five years' imprisonment. Appellant contends that the trial court committed reversible error by (1) denying appellant's motion to suppress the results of a blood alcohol test; and (2) failing to direct appellant to wear civilian clothes at trial. We affirm.

---

[1] *See* Tex. Penal Code Ann. §§ 49.04, 49.09(b) (Vernon Supp. 2014).

BACKGROUND

Lieutenant William Settegast of the Galveston County Sheriff's Office stopped appellant for failure to maintain his pickup truck in a single lane of traffic. After stopping appellant, Settegast observed that appellant smelled of alcohol, spoke with slurred speech, and was unsteady on his feet.

Settegast contacted Deputy Jacob Manuel to investigate whether appellant had driven while intoxicated. Manuel arrived on the scene, and Settegast departed. Manuel determined that appellant spoke Spanish and "very little English." Manuel called Deputy David Galindo to the scene to translate.

Manuel asked appellant, through Galindo's translation, whether appellant would agree to participate in a field sobriety test. Appellant refused. Manuel placed appellant under arrest for driving while intoxicated.

Galindo read the contents of Form DIC-24 to appellant in Spanish.[2] The form warned appellant of the consequences of giving or refusing to give a breath or blood specimen. The form stated that an officer may apply for a warrant if the suspect refuses to provide a specimen. Appellant consented to providing a breath specimen after Galindo read the form to him in Spanish.

Manuel drove appellant to the Dickinson Police Station to take a breath specimen. Galindo stayed with appellant's truck. Department of Public Safety Trooper Matthew Leighton took appellant into custody at the police station to conduct appellant's breath test. Leighton observed appellant for 15 minutes. Leighton told appellant how to give a sufficient breath specimen for alcohol-

---

[2] Form DIC-24 is the standard warning to be given to a suspected intoxicated driver before an officer asks the suspect to give a breath or blood specimen. *See Martin v. Dep't of Pub. Safety*, 964 S.W.2d 772, 773 (Tex. App.—Austin 1998, no pet.); *see also* Tex. Transp. Code Ann. § 724.015 (Vernon Supp. 2014) (stating the information an officer must provide to a suspected intoxicated driver before requesting the suspect to give a breath or blood specimen).

content analysis. Appellant blew into the police station intoxilyzer twice. The intoxilyzer recorded appellant's breath specimen as "deficient" and was unable to analyze appellant's breath for alcohol content.

Manuel reviewed appellant's criminal history and discovered that appellant had two prior convictions for driving while intoxicated. Manuel contacted Galveston County Assistant District Attorney John Hall, who requested a mandatory draw of appellant's blood. *See* Tex. Transp. Code Ann. §§ 724.011(a), 724.012(b), 724.013 (Vernon 2011). Manuel thereafter learned that appellant had failed to provide a sufficient breath specimen for alcohol-content analysis. Manuel considered appellant's failure a "refusal" to provide a breath specimen.

Manuel transported appellant to the Mainland Medical Center and ordered Dr. Suchmor Thomas to draw appellant's blood pursuant to the Transportation Code. *See id.* §§ 724.011(a), 724.012(b), 724.013. Thomas drew appellant's blood while Manuel was present.

The State indicted appellant for felony driving while intoxicated. Appellant filed a motion to suppress the blood specimen and the results of a blood alcohol test of the specimen. At the evidentiary hearing on the motion to suppress, appellant's counsel questioned Dr. Thomas:

> [APPELLANT'S COUNSEL]: You didn't have any opportunity to ask [appellant] whether he gave consent to having his blood drawn?
>
> [DR. THOMAS]: I did. I always ask the patients before I do any blood draws or any procedures.
>
> [APPELLANT'S COUNSEL]: And you didn't give him any kind of form or consent to sign, did you sir?
>
> [DR. THOMAS]: We usually don't. We just ask them.
>
> [APPELLANT'S COUNSEL]: And so you asked him, and then you

3

just take blood?

[DR. THOMAS]: No. We ask them. We get his consent. I tell him, "My name is Dr. Thomas. Can I draw your blood," because it is supposed to be sent to the State for alcohol blood level. And he said, "Yes, Doctor, I do."

[APPELLANT'S COUNSEL]: And so you routinely take blood without having a person sign a consent form, sir?

[DR. THOMAS]: If the patient is intubated, the patient doesn't know where he is, we can't. Otherwise, we always do[.]

The State questioned Thomas:

[THE STATE]: And you said that you asked [appellant] to draw his blood, and he gave consent. Was he violent with you? Did he fight with you?

[DR. THOMAS]: No, ma'am.

[THE STATE]: You asked him and he said yes and then you took the blood?

[DR. THOMAS]: Yes.

Settegast, Manuel, Galindo, and Leighton testified at the hearing. None of the officers testified that appellant was told his blood draw was mandatory. The trial court denied appellant's motion.

The trial court admitted appellant's blood specimen and the results of a blood alcohol test of the specimen into evidence at trial. The results showed a blood alcohol concentration of 0.161 grams of alcohol per 100 milliliters of blood, which is above the legal driving limit. *See* Tex. Penal Code Ann. § 49.01(1), (2) (Vernon 2011). The jury convicted appellant of felony driving while intoxicated and assessed his punishment at five years' imprisonment. Appellant timely appealed.

4

## I.    Motion to Suppress

In his first issue, appellant contends that the trial court erred in denying his motion to suppress his blood specimen and the results of a blood alcohol test of the specimen.

### A.    Standard of Review

Evidence obtained in violation of the law must be excluded from jury consideration in criminal cases upon the defendant's request.  Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005); *see also Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (evidence obtained by search and seizure in violation of the Constitution is inadmissible).

We review a trial court's ruling on a motion to suppress under a bifurcated standard.  *Vasquez v. State*, 324 S.W.3d 912, 918 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).  We give "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor."  *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We review *de novo* questions of law and "mixed questions of law and fact" that do not depend upon credibility and demeanor.  *Fienen v. State*, 390 S.W.3d 328, 335 (Tex. Crim. App. 2012); *Guzman*, 955 S.W.2d at 89.  When, as here, there are no explicit findings of historical fact, we review the evidence in the light most favorable to the trial court's ruling assuming that the trial court made implicit findings of fact supported in the record that buttress its ruling.  *See Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The ultimate touchstone of the Fourth Amendment is reasonableness. *Riley v. California*, 134 S. Ct. 2473, 2482 (2014). A search conducted without a warrant issued upon probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). It is the State's burden to show that a warrantless search falls within one of these exceptions. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003).

The State concedes that appellant's blood was drawn without a warrant. It argues that its search was reasonable under the voluntary consent and exigent-circumstances exceptions to the warrant requirement. *See id.* (recognizing voluntary consent to search and search under exigent circumstances as exceptions to the Fourth Amendment warrant requirement).

We address the State's argument that appellant voluntarily consented to the warrantless blood draw. Finding consent, we do not consider whether exigent circumstances also support the reasonableness of the blood draw.

### B. Consent

A warrantless search authorized by consent is wholly valid. *Schneckloth*, 412 U.S. at 222. "A driver's consent to a blood or breath test must be free and voluntary, and it must not be the result of physical or psychological pressures brought to bear by law enforcement." *Fienen*, 390 S.W.3d at 333. Consent is not established by "showing no more than acquiescence to a claim of lawful

6

authority." *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968). "The ultimate question is whether the person's 'will has been overborne and his capacity for self-determination critically impaired' such that his consent to search must have been involuntary." *Fienen*, 390 S.W.3d at 333 (quoting *Schneckloth*, 412 U.S. at 225-26). The validity of alleged consent is a question of fact, and the State must prove voluntary consent by clear and convincing evidence. *Id.*

The trial court must consider the "totality of the circumstances" in order to determine whether consent was given voluntarily. *Id.* The court "must conduct a careful sifting and balancing of the unique facts and circumstances of each case in deciding whether a particular consent to search was voluntary or coerced." *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011). "[N]o one statement or action should automatically amount to coercion such that consent is involuntary." *Fienen*, 390 S.W.3d at 333. We uphold the trial court's finding of voluntariness unless it is clearly erroneous. *Id.* at 335.

The State argues that appellant's warrantless blood draw was constitutional because appellant gave Dr. Thomas actual, voluntary consent to draw his blood. Appellant acknowledges that he agreed Dr. Thomas could draw his blood. He argues that his agreement was at most acquiescence to Manuel's claim of lawful authority to compel production of appellant's blood specimen. *See Bumper*, 391 U.S. at 548–49 (consent not voluntary where officer falsely represented he had a valid search warrant).[3]

---

[3] The Texas Transportation Code provides that a person arrested for driving while intoxicated is deemed to have consented to the taking of one or more specimens of the person's breath or blood for analysis to determine alcohol concentration. Tex. Transp. Code Ann. § 724.011(a); *see Leal v. State*, No. 14-13-00208-CR, 2014 WL 5898299, at *8 (Tex. App.— Houston [14th Dist.] Nov. 13, 2014, no. pet. h.). A driver, however, may refuse an officer's request to submit a specimen unless certain aggravating circumstances exist. Tex. Transp. Code Ann. §§ 724.012(b), 724.013; *see State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178, at *7

We deem the trial court to have made an implied finding that appellant voluntarily consented to his blood draw because the trial court did not make explicit findings of fact, and this implied finding buttresses the trial court's ruling. *See Carmouche*, 10 S.W.3d at 328.[4] We must uphold the trial court's implied finding of voluntary consent because it is not clearly erroneous. *See Fienen*, 390 S.W.3d at 335.

(Tex. Crim. App. Nov. 26, 2014) ("[A]n individual who is arrested for an 'ordinary' DWI . . . has an absolute right to refuse to provide a specimen, notwithstanding the existence of implied consent.").

Texas Transportation Code section 724.012(b)(3)(B) describes an instance of aggravating circumstances. As written, section 724.012(b)(3)(B) authorizes an officer to take a specimen of a person's breath or blood if (1) the officer arrests the person for driving while intoxicated; (2) the person refuses the officer's request to submit a specimen voluntarily; and (3) at the time of arrest, the officer possesses or receives reliable information from a credible source that the person previously has been convicted of driving while intoxicated on two or more prior occasions. Tex. Transp. Code Ann. § 724.012(b)(3)(B); *see Leal*, 2014 WL 5898299, at *8. If the stated circumstances exist, the statute provides that a person cannot revoke statutory implied consent. Tex. Transp. Code Ann. § 724.012(b)(3)(B); *see Villarreal*, 2014 WL 6734178, at *7 ("[I]f one of the aggravating circumstances is present, then, pursuant to the statute, even if a suspect refuses to comply, an officer has a mandatory duty to require that the suspect's blood be drawn.").

The Texas Court of Criminal Appeals recently held a warrantless blood draw unconstitutional when justified solely by implied consent made irrevocable by section 724.012(b). *See Villarreal*, 2014 WL 6734178 at *21 ("[A] nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violates the Fourth Amendment.").

*Villarreal* does not dictate the outcome of this case. *Villarreal* was decided after the parties submitted their briefs to this court. Appellant's opening brief anticipates some of the constitutional arguments against warrantless searches based solely on implied consent as discussed in *Villarreal*. The State asserts on appeal that it does not rely on statutory implied consent; instead, it relies only on appellant's actual consent and exigent circumstances. *Villarreal* did not address actual consent or exigent circumstances. *See id.* at *2 (State conceded that the suspect's blood was drawn without his actual consent and did not argue for exigent circumstances).

[4] Although the trial court did not make explicit findings of fact, it stated at the conclusion of the hearing on appellant's motion to suppress: "[L]ast but not least, Dr. Thomas who is not an agent of the State adamantly testified that the Defendant consented to the blood draw. All of these things taken together, the Court denies the motion to suppress the evidence."

8

Although appellant argues that his consent was mere acquiescence, no evidence in the record indicates that Manuel or any other officer told appellant his blood draw was mandatory. At most, the record shows that Manuel deemed appellant's failure to give a sufficient breath specimen to be a "refusal;" Hall instructed Manuel to obtain a mandatory blood draw; Manuel transported appellant to a hospital and ordered Dr. Thomas to draw appellant's blood; and Dr. Thomas drew appellant's blood while Manuel was present. Nothing in the record shows that Manuel made a claim to appellant of lawful authority to compel the production of appellant's blood specimen.

Manuel did not ask for appellant's consent to draw his blood, but Dr. Thomas did. Dr. Thomas testified that he asked appellant, "Can I draw your blood." Dr. Thomas's request would have indicated to a reasonable person that he or she was free to refuse. *See United States v. Drayton*, 536 U.S. 194, 206 (2002) (officer's question of whether an individual objected to being searched would have indicated to a reasonable person that he or she was free to refuse). Appellant replied "Yes," and did not resist Dr. Thomas when he took appellant's blood.

Viewing the totality of the circumstances in the light most favorable to the trial court's ruling, we conclude that the trial court's finding that appellant gave voluntary consent to having his blood drawn is not clearly erroneous. *See Schneckloth*, 412 U.S. at 225-26; *Fienen*, 390 S.W.3d at 333-35.

We conclude that the trial court did not err in denying appellant's motion to suppress his blood specimen and the results of a blood-alcohol test of the specimen because the trial court found, without clear error, that appellant had voluntarily consented to having his blood drawn. *See Schneckloth*, 412 U.S. at 225 ("[A] search authorized by consent is wholly valid."). We overrule appellant's first issue.

9

In his second issue, appellant contends that the Texas implied-consent statute is unconstitutional. *See* Tex. Transp. Code. Ann. § 724.011(a). We do not reach appellant's second issue because a determination of the constitutionality of the implied-consent statute is unnecessary to a decision in this case. *See In re Doe 2*, 19 S.W.3d 278, 284 (Tex. 2000) ("[T]he constitutionality of a statute should be considered only when the question is properly raised and such determination is necessary and appropriate to a decision in the case.").

## II.   Prison Clothes

In his third issue, appellant argues that the trial court violated Texas Code of Criminal Procedure article 2.03 by not directing him to wear civilian clothes at trial when appellant had not knowingly and intelligently waived his right to be tried in civilian clothes.

Prior to jury selection, the trial court advised appellant in chambers that he had a right to wear civilian clothes at trial, and that the trial court had such clothes available. The trial court asked appellant if he would like to be tried in civilian clothes, and appellant responded that he was fine in the prison clothes he was wearing. Appellant's counsel stated that he had offered appellant civilian clothes, but that appellant had declined his offer. Appellant wore prison clothes at trial. Appellant asserts on appeal that he did not know the importance of his decision to be tried in prison clothes.

Texas Code of Criminal Procedure article 2.03(b) states: "It is the duty of the trial court, the attorney representing the accused, the attorney representing the state and all peace officers to so conduct themselves as to insure a fair trial for both the state and the defendant [and] not impair the presumption of innocence." Tex. Code Crim. Proc. Ann. art. 2.03(b) (Vernon 2005); *see also Estelle v. Williams*, 425 U.S. 501, 503 (1976) (the right to a fair trial is a fundamental liberty secured

10

by the Fourteenth Amendment; the presumption of innocence is a basic component of a fair trial). "If a defendant timely objects to being put to trial while dressed in prison clothes, he should not be compelled to stand trial in that attire. Such a compulsion would violate the defendant's right to a fair trial and his right to be presumed innocent." *Randle v. State*, 826 S.W.2d 943, 944-45 (Tex. Crim. App. 1992). A defendant must timely object to being made to wear prison clothes or he waives the right to complain. *Id.* at 945.

We determine that the trial court did not err in allowing appellant to be tried in prison clothes because appellant did not object to being tried in such clothes. *See Randle*, 826 S.W.2d at 945; *see also Estelle*, 425 U.S. at 512-13 ("[T]he failure to make an objection to the court as to being tried in [prison] clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation."). Appellant's failure to understand the importance of his decision is not grounds for error, nor did it impose a duty on the trial court to direct appellant to wear civilian clothes. *See Randle*, 826 S.W.2d at 945; *see also Estelle*, 425 at 508 n.3, 512-13 (the right not to be compelled to stand trial in prison clothes is not a fundamental right of the sort at issue in *Johnson v. Zerbst*, 304 U.S. 458 (1938), where the issue concerned whether the accused willingly stood trial without the benefit of counsel). We overrule appellant's third issue.

## CONCLUSION

We affirm the trial court's judgment.

/s/     William J. Boyce
         Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.
Publish — Tex. R. App. P. 47.2(b).