**Affirmed and Memorandum Opinion filed June 2, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00638-CR

**JAIME ARTURO SANCHEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1310752**

## M E M O R A N D U M   O P I N I O N

Appellant, Jaime Arturo Sanchez, was indicted for possession of marijuana in a usable quantity of more than fifty pounds and less than two thousand pounds. The trial court denied his motion to suppress evidence seized during a warrantless search. The parties then made a plea-bargain agreement, under which appellant entered a guilty plea to a reduced charge in exchange for the State's recommendation that punishment be set at one year's confinement in state jail. The

trial court rendered judgment on the parties' agreement and certified appellant's right to appeal the denial of the motion to suppress. In three issues, appellant contends admission of the evidence violated the United States and Texas Constitutions and section 38.23 of the Texas Code of Criminal Procedure. Because appellant lacks standing to challenge the validity of the search, we affirm.

BACKGROUND

### A.    The search

On the morning of June 22, 2011, the Harris County Sheriff's Office received a report of a suspicious, large, wooden crate at Land Air Express, a freight forwarding company. Officers John O'Brien, Jonathon Sandel, and Patrick McIntyre, members of the sheriff's DEA Task Force, were assigned to investigate the package. Officers O'Brien and McIntyre testified at the hearing on appellant's motion to suppress.

The officers arrived at the scene and saw the crate. They called for a narcotics dog, which alerted on the crate. The officers watched the crate until a truck picked it up.

Once the crate was loaded onto the truck, the officers followed the truck to an industrial complex. Officer O'Brien said the complex housed three or four warehouses, all of which appeared to be auto body shops. The truck entered one of the warehouses, where a forklift removed the crate.

Once marked law enforcement vehicles arrived, the officers entered the gate leading into the complex. As they pulled into the parking lot, two men came out of the partially raised warehouse door, which was approximately ten to fourteen feet wide and fifteen to twenty feet tall. Through the open door, Officer O'Brien could see people standing inside the warehouse and a partially disassembled wooden

2

crate holding a red diesel tank. Uniformed police officers entered the open door with weapons drawn, handcuffed those inside the warehouse, and conducted a pat-down search for weapons. They brought those people to the parking lot outside the warehouse.

Officer McIntyre talked with appellant inside the warehouse. Appellant told him he owned the business. When the officer asked him what was in the crate, appellant responded, "Man, you already know. It's weed."

Appellant gave written consent to a search of the crate. The form provides consent to a search of the "Cruz Body Shop" located at 2765 Trenton. The place actually searched, however, was a warehouse connected to the body shop. The correct address of the warehouse is 10861 Shady Lane.

Officer McIntyre also obtained oral consent from appellant to search the warehouse and the diesel tank. At appellant's direction, one of the workers in the warehouse opened the metal container with a welding torch. The police recovered bundles of marijuana from inside the diesel tank.

## B.     The motion to suppress

Most of the suppression hearing concerned whether the police properly entered the premises and the validity of appellant's consent due to the discrepancy between the address written and the address searched. The trial court found the officers' testimony credible, the police had probable cause to enter the premises, the premises were open to the public, the address on the written consent could describe the warehouse searched, appellant orally consented to a search of the container, and appellant gave both consents voluntarily.

3

Appellant testified he and others were starting a business on the premises selling barbecue pits. He said the "business" was not open to the public, though it is not clear if he was referring to the body shop or the barbecue pit business.

On cross-examination, appellant testified he did not own or lease the land or the buildings. He said he did not own the body shop or the barbecue pit business, and he had not put money into the barbecue pit business, elaborating that he had "no lease, no bills, nothing to this property." Appellant also said he did not keep anything in the warehouse. Despite that testimony, appellant agreed on re-direct examination that "on paper it's not [him] on the lease, but that's [his] space," and he had the right to exclude people from it.

Following appellant's testimony, which the trial court described as "partly credible," the court found he lacked standing to contest the validity of the search. The trial court denied appellant's motion to suppress.

Appellant entered his guilty plea the next day. This appeal timely followed.

**ANALYSIS**

## I.    Standard of review

Evidence obtained in violation of the law must be excluded from jury consideration in criminal cases upon the defendant's request. Tex. Code Crim. Proc. Ann. art. 38.23; *Donjuan v. State*, 461 S.W.3d 611, 615 (Tex. App.—Houston [14th Dist.] 2015, no pet.). That request is made through a motion to suppress. We review a trial court's ruling on a motion to suppress under a bifurcated standard of review:

> First, we afford almost total deference to a trial judge's determination of historical facts. The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. The judge is entitled to believe or disbelieve all or part of

4

the witness's testimony—even if that testimony is uncontroverted—because he or she has the opportunity to observe the witness's demeanor and appearance.

If the trial judge makes express findings of fact, we view the evidence in the light most favorable to his ruling and determine whether the evidence supports these factual findings. When findings of fact are not entered, we "must view the evidence 'in the light most favorable to the trial court's ruling' and 'assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record.'"

Second, we review a trial court's application of the law of search and seizure to the facts de novo. We will sustain the trial court's ruling if that ruling is "reasonably supported by the record and is correct on any theory of law applicable to the case."

*Valtierra v. State*, 310 S.W.3d 442, 447–48 (Tex. Crim. App. 2010) (citations omitted).

## II.     Search and seizure

### A.     General standards

The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures by government officials. U.S. Const. amend. IV. Among the actions that constitute a search is a governmental intrusion into an area where a person has a reasonable expectation of privacy. *Richardson v. State*, 865 S.W.2d 944, 948–49 (Tex. Crim. App. 1993); *see also State v. Granville*, 423 S.W.3d 399, 407 n.22 (Tex. Crim. App. 2014).

To comply with the Fourth Amendment, a search pursuant to a criminal investigation generally (1) requires a search warrant or recognized exception to the warrant requirement, and (2) must be reasonable under the totality of the circumstances. *State v. Villareal*, 475 S.W.3d 784, 796 (Tex. Crim. App. 2014). A search conducted without a warrant is "per se unreasonable . . . subject only to a

few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The State bears the burden to show that a warrantless search falls within one of those exceptions. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003).

## B. Standing

The concept of privacy includes the related concept of standing—that is, whether a defendant has a recognizable privacy stake that supports a Fourth Amendment right. "The 'standing' doctrine ensures that a person may claim only that his own rights have been violated; he cannot assert that he is entitled to benefit because the rights of another have been violated." *Granville*, 423 S.W.3d at 405. Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show he personally had a reasonable expectation of privacy that the government invaded. *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004); *State v. Millard Mail Servs., Inc.*, 352 S.W.3d 251, 253 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (per curiam). To decide whether a defendant had such an expectation, a court first determines whether he demonstrated an actual, subjective expectation of privacy in the place or object searched. *Pham v. State*, 324 S.W.3d 869, 874–75 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). If so, the court then decides whether the defendant's subjective expectation of privacy was one that society would regard as objectively reasonable or legitimate. *Id.* Factors that courts use in deciding whether a person had a reasonable expectation of privacy include:

(1)      whether the defendant had a proprietary or possessory interest in the place or object searched;

(2)      whether the defendant's presence in or on the place searched was legitimate;

(3)      whether the defendant had a right to exclude others from the place or object;

(4)      whether the defendant took normal precautions, prior to the search, which are customarily taken to protect privacy in the place or object;

(5)      whether the place or object searched was put to a private use;

(6)      whether the defendant's claim of privacy is consistent with historical notion[s] of privacy.

*Granville*, 423 S.W.3d at 407–08.

The expectation of privacy on commercial premises is less than the expectation of privacy in a person's home. *New York v. Burger*, 482 U.S. 691, 700, 107 S. Ct. 2636, 96 L. Ed. 2d 601 (1987). "Police, although motivated by an investigative purpose, are as free as the general public to enter premises 'open to the public,' when they are open to the public. Officers are then entitled to note objects in plain view, or examine merchandise as a customer would. For 'actions not to constitute a Fourth Amendment search, the officer must remain in that portion of the premises which is open to the public.'" *State v. Weaver*, 349 S.W.3d 521, 526–27 (Tex. Crim. App. 2011) (citations omitted).

The only evidence of appellant's subjective expectation of privacy is his testimony that (1) the unspecified "business" was not open to the public, and (2) although he did not officially own or lease the warehouse, it was "his space" and he had the right to exclude people from it. Yet appellant also testified unequivocally that he had no ownership or leasehold interest in the warehouse or

7

the business and had no privacy interest in the warehouse. He testified another man who was at the warehouse paid the bills for the space and was going to put up signs for the business. They had a few pits ready to sell, and potential customers of the barbeque pits could have walked in to buy one. The warehouse had a large open door. Given the trial court's characterization of appellant's testimony as "partly credible" and its role as sole judge of the credibility of witnesses, we hold the trial court did not abuse its discretion in disregarding the self-serving portions of appellant's conflicting testimony.

We conclude that the record supports the trial court's conclusion that appellant lacks standing to contest the validity of the search. Due to that conclusion, we need not decide whether the search violated the Fourth Amendment. We overrule each of appellant's issues.

## CONCLUSION

We affirm the judgment of the trial court.

/s/     J. Brett Busby
         Justice

Panel consists of Justices Christopher, McCally, and Busby.
Do Not Publish — TEX. R. APP. P. 47.2(b).

8