**Affirmed and Memorandum Opinion filed October 24, 2017.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00673-CR

**QUINCEY NUNEZ REYNOSA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 230th District Court
Harris County, Texas
Trial Court Cause No. 1472480**

## M E M O R A N D U M   O P I N I O N

Appellant Quincey Reynosa appeals his conviction for driving while intoxicated ("DWI"). In two issues, he argues: (1) the trial court erred in refusing to include a requested jury instruction under article 38.23 of the Texas Code of Criminal Procedure, which would have allowed the jury to determine whether he consented to giving a blood sample before the jury considered the blood-test results as evidence of appellant's intoxication; and (2) his constitutional rights were violated by the State's failure to disclose allegedly exculpatory material until after trial.

For the reasons that follow, we affirm. As our disposition rests on settled principles of law, we issue this memorandum opinion. *See* Tex. R. App. P. 47.4.

## Background

Shortly after midnight on June 21, 2015, Harris County Sheriff's Office Deputy Chadrick O'Bryant observed appellant drive northbound on State Highway 249 and veer into oncoming traffic, nearly causing a collision with another vehicle. Deputy O'Bryant stopped appellant's car, and the deputy observed that appellant had bloodshot eyes, slurred speech, and a strong odor of alcohol. Deputy O'Bryant asked appellant to step out of his car and, after appellant did so, the deputy administered the horizontal gaze nystagmus ("HGN") test, which is a standard field sobriety test. Appellant displayed six out of six clues of intoxication. After securing appellant in the rear of his patrol vehicle, Deputy O'Bryant searched appellant's vehicle and found in the front center console two empty forty-ounce alcoholic-beverage containers and one half-empty forty-ounce alcoholic-beverage container, which was cold to the touch. The cold half-empty container indicated to Deputy O'Bryant that it had been recently opened and consumed.

Deputy O'Bryant took appellant to the DWI room at a nearby police substation, where appellant refused to perform additional sobriety tests, specifically the walk-and-turn and one-leg-stand tests. Deputy O'Bryant filmed his interaction with appellant in the DWI room, but the video has no sound. After being warned of the statutory consequences of refusing or agreeing to submit to a breath or blood test, appellant consented, according to Deputy O'Bryant, to provide a blood sample.

Appellant was then transferred to Houston Police Department's ("HPD") intoxication facility. On a video recording with sound, taken from the blood-draw room, an off-camera police officer is heard speaking to appellant, "It is my understanding you have consented to the blood draw. To the left is a registered

2

nurse, and she is going to draw your blood, okay?" It is unclear from the video whether appellant responds, either verbally or nonverbally. The video also shows a nurse confirming with appellant that he had consented to the blood draw and requesting appellant to sign a consent form "if [he] agree[d] to give a blood specimen." Appellant signed the consent form.

Jessica Carillo, a registered nurse who works for HPD's DWI Task Force and drew appellant's blood sample, testified that, by the time a suspect is brought to the blood-draw room, either the suspect has consented to a blood draw or the police have obtained a warrant. The nurses who draw blood verify the suspect's consent or verify the warrant authorizing the blood draw. If there is any question about consent, it will be resolved prior to blood being drawn. Carillo testified that she was confident appellant had consented to the blood draw.

The results of appellant's blood test revealed a blood alcohol content of 0.196, more than double the legal limit of 0.08.[1]

Appellant was indicted for third-degree felony DWI,[2] and the case proceeded to a jury trial. During trial, the trial court held a hearing on appellant's motion to suppress, which sought to exclude the blood-test results on the ground that appellant had not consented to the blood draw. After hearing testimony from Deputy O'Bryant and appellant, the trial court denied the motion. The court found appellant freely and voluntarily consented to the blood draw "as contained by his signature in State's Exhibit No. 7 [the signed consent form] and what is contained on State's Exhibit No. 4, being the video of the blood draw room, as well as the testimony of the deputy."

---

[1] *See* Tex. Penal Code § 49.01(2)(B) (defining "intoxicated" as, relevantly, having an alcohol concentration of 0.08 or more).

[2] *See* Tex. Penal Code §§ 49.04, 49.09(b)(2) (offense is third-degree felony if, *inter alia*, the person has previously been twice convicted of DWI).

3

After both sides rested, appellant requested a jury instruction that would have advised the jury to first determine whether appellant consented to the blood draw, and if the jury found he did not, to disregard the test results as evidence of appellant's guilt. As he had argued during the pre-trial suppression hearing, appellant again argued that the DWI room video showed appellant shaking his head, which appellant argued raised a fact issue as to whether he had consented to the blood draw. The trial court refused the requested instruction.

The jury found appellant guilty of the charged offense, which was enhanced by two previous convictions. Appellant elected that the trial court assess his punishment, and the court sentenced appellant to thirty years' confinement.

This appeal timely followed.

## Analysis

Appellant challenges his conviction in two issues. First, appellant contends that the trial court erred in refusing his requested jury instruction under article 38.23 of the Texas Code of Criminal Procedure. Second, appellant claims his constitutional rights were violated by the State's failure to disclose allegedly exculpatory material until after the jury's verdict.[3]

### A.    Jury Instruction

We first address appellant's argument that the trial court erroneously refused his requested jury instruction regarding consent for a blood draw. At the charge conference, appellant's counsel pointed to video evidence purportedly showing appellant shaking his head back and forth in response to the officer's question

---

[3] In an early section of appellant's brief, he states another issue for consideration, arguing that the warrantless blood draw violated his constitutional right to be free from unreasonable search and seizure. Appellant does not brief this issue, however, and therefore we do not address it on appeal. *See* Tex. R. App. P. 38.1(i).

4

whether appellant consented to a blood draw. Contending the video raised a fact issue on consent, appellant requested an article 38.23 instruction in the jury charge, which would have allowed the jury to determine whether the blood test was obtained without a warrant or consent before considering that evidence in deciding appellant's guilt or innocence. *See* Tex. Code Crim. Proc. art. 38.23(a). The trial court denied appellant's requested instruction.

1. *Standard of review and governing law*

We review a complaint about jury-charge error in two steps. We first determine whether an error occurred. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If so, we then analyze the error for harm. *Id.* There are separate standards for the harm analysis, depending on whether the defendant preserved error by timely raising the complaint. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *see also Cornet v. State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2013) (party may preserve error in jury charge by objection or request for instruction); *Jenkins v. State*, 468 S.W.3d 656, 671 & n.9 (Tex. App.—Houston [14th Dist.] 2015, pet. dism'd). If the defendant timely preserved error, then reversal is required if there was some harm to the defendant. *Marshall*, 479 S.W.3d at 843. If the defendant failed to preserve error in the trial court, then reversal is required only if the error was so egregious and created such harm that the defendant did not have a fair and impartial trial. *Id.*

The Fourth Amendment to the United States Constitution secures "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Drawing a blood specimen is a search and seizure under the Fourth Amendment. *See Weems v. State*, 493 S.W.3d 574, 577 (Tex. Crim. App. 2016); *Hovis v. State*, 513 S.W.3d 649, 651 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Searches conducted without a warrant are per se unreasonable under

the Fourth Amendment, unless they are subject to an exception. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). Voluntary consent is an exception to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003); *see also Donjuan v. State*, 461 S.W.3d 611, 616 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("A warrantless search authorized by consent is wholly valid.").

"No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." Tex. Code Crim. Proc. art. 38.23(a). Under article 38.23, entitled "Evidence not to be used," "[i]n any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained." *Id.* A defendant is entitled to a jury instruction under article 38.23 if: (1) the evidence heard by the jury raises an issue of fact, (2) the defendant affirmatively contests the evidence on that fact, and (3) the contested factual issue is material to the lawfulness of the challenged conduct. *See Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012).

A defendant's right to an article 38.23 instruction is not invoked unless affirmative evidence puts the existence of the challenged fact in question. *See Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007). A cross-examiner's questions do not create a conflict in the evidence, although the witness's answers to those questions might. *Id.* Further, the jury's right to disbelieve a witness's testimony in whole or part does not create a factual dispute as to article 38.23. *See Cadoree v. State*, 331 S.W.3d 514, 521 (Tex. App.—Houston [14th Dist.] 2011, pet.

ref'd). When the evidence does not raise a fact issue, the trial court should not charge the jury under article 38.23(a). *Madden*, 242 S.W.2d at 510, 518.

2. *Application*

Undisputedly, the State did not have a warrant for the blood draw. The State maintains, however, that it lawfully obtained the blood sample because appellant voluntarily consented to the warrantless blood draw. Appellant argues that the evidence raised a fact issue regarding consent, and that the court should have instructed the jury under article 38.23 to resolve that issue before the jury could consider the blood-test results in its deliberations. We turn to a review of the evidence.

At trial, the State introduced a (silent) video recording purportedly showing Deputy O'Bryant reading appellant his DIC-24 statutory warnings in the DWI room. These warnings provide, among other things, some of the potential consequences of refusing or submitting to a breath or blood test. *See Freeman v. State*, 413 S.W.3d 198, 203 n.1 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (citing Tex. Transp. Code § 724.015). At various points, the video shows appellant swaying, shrugging, nodding, and shaking his head. Toward the end of the video, the recording shows appellant shaking his head back and forth. This head-shake, appellant argues, indicates that appellant was refusing to provide a consensual blood sample.

Deputy O'Bryant testified that appellant verbally consented to a blood draw while in the DWI room. At trial, as he watched the video of appellant in the DWI room, Deputy O'Bryant narrated, "he's speaking and his shoulders are shrugging[,] saying I don't care, just get the blood." According to Deputy O'Bryant, appellant was "speaking also as he's shaking his head." Because no sound accompanies the video, the record does not reveal the precise words uttered in the DWI room.

7

Appellant posits that Deputy O'Bryant's testimony and the DWI room video raise a fact question as to appellant's consent to the blood draw, therefore warranting an article 38.23 instruction in the jury charge.

We disagree. Deputy O'Bryant testified that appellant said, "I don't care, just get the blood," while appellant was shrugging his shoulders and shaking his head. The video shows appellant shrugging his shoulders, shaking his head, and speaking. Given the absence of a sound recording, however, the video does not refute Deputy O'Bryant's testimony explaining to the jury his questions or appellant's answers.[4] Accordingly, no conflict exists between Deputy O'Bryant's testimony and the video insofar as appellant's consent is concerned. *See Holmes v. State*, 248 S.W.3d 194, 199 (Tex. Crim. App. 2008) ("[T]here is nothing to instruct the jury about unless there is affirmative evidence that raises a contested fact issue."); *Madden*, 242 S.W.3d at 510 (standard is whether evidence on a material fact issue was "affirmatively contested"). Appellant limits his focus to evidence stemming only from the DWI room, but there is other evidence in the record relevant to the question of appellant's consent.

State's Exhibit 4 is another video recording, which depicts, with sound, the nurse drawing appellant's blood at HPD's intoxication facility. In the video, the nurse asked appellant to confirm that he is consenting to a blood draw, and if he is, to sign a form that the nurse gives appellant. Appellant signed the form. The signed

---

[4] Not only is it unclear from the video to what (if anything) appellant is shaking his head in response, but it is unclear that appellant is shaking his head in an attempt to indicate a negative response. As the trial court noted, "I see movements. . . . That does not constitute, to me from what I can see, anything other than just somebody moving around." The court went on to state for the record, "Let me be clear about this fact issue. . . . I don't know what y'all are talking about, about this head nodding, shaking, whatever. I don't see that there."

consent form was admitted as evidence, and it stated, "Let my signature state I have given consent for these blood samples to be drawn."

Because no affirmative evidence contradicts Deputy O'Bryant's testimony, no fact question exists regarding appellant's consent and the issue should not have been submitted to the jury. *See Cadoree*, 331 S.W.3d at 523. This conclusion is buttressed by the signed consent form memorializing appellant's prior consent given to Deputy O'Bryant. We conclude that the trial court did not err in refusing appellant's requested article 38.23 instruction in the jury charge. *See Madden*, 242 S.W.3d at 510, 518; *Hovis*, 513 S.W.3d at 652.

Having found no error, we need not engage in a harm analysis. *See Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009).

We overrule appellant's first issue.

## B. *Brady* Claim

In his second issue, appellant argues that his rights under the Sixth and Fourteenth Amendments to the United States Constitution and under article I, sections 13 and 19 of the Texas Constitution were violated by the State's failure to disclose purported *Brady* material[5] until after trial.

### 1. *Relevant law*

The State has an affirmative duty to turn over exculpatory or impeachment evidence favorable to the defendant that is material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). An accused is entitled to a new trial due to a *Brady* violation if the accused shows that

---

[5] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

(1) the prosecutor failed to disclose evidence, (2) the evidence is favorable to the accused, and (3) the evidence is material (i.e., the evidence creates a probability sufficient to undermine confidence in the outcome of the proceeding). *See Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Generally, to preserve a *Brady* complaint for appellate review, the record must show that an appellant timely and specifically objected to the *Brady* violation and obtained a ruling (or a refusal to rule) on the objection from the trial court. *See Pena v. State*, 353 S.W.3d 797, 807, 809 (Tex. Crim. App. 2011); Tex. R. App. P. 33.1(a). A defendant can preserve a *Brady* complaint as to information disclosed for the first time after trial in a motion for new trial. *See Pena*, 353 S.W.3d at 807-09.

2. *Relevant facts*

At trial, the State called Dr. Fessessework Guale to testify as an expert. Dr. Guale testified that she has a master's degree in toxicology, that she is board certified in toxicology, and that she is the toxicology operations manager at the Harris County Institute of Forensic Sciences. Dr. Guale's testimony primarily concerned the toxicology results of appellant's blood draw, which indicated that appellant's blood-alcohol content was above the legal limit.

After the trial court accepted the verdict, the district attorney filed a *Brady* disclosure, which advised that Dr. Guale had incorrectly testified regarding her educational background. Dr. Guale has a master's degree in physiological sciences "with coursework and research in toxicology," not a master's degree in toxicology, as she testified. The State filed and served its *Brady* disclosure within the deadline for appellant to raise any objection in a timely motion for new trial. Even though appellant already had filed a motion for new trial before the State's *Brady* disclosure, the disclosure's timing would have allowed for appellant to timely file an amended

motion for new trial asserting a *Brady* complaint. Appellant did not file an amended motion for new trial.

3. *Analysis*

On appeal, appellant contends that "[t]he false testimony was critical in evaluating [Dr. Guale's] credibility . . . [and] [t]he jury's estimate of the truthfulness and reliability of Dr. Guale may well have been determinative of Appellant's guilt or innocence." The State responds that appellant waived his *Brady* complaint on appeal by failing to timely raise the issue in the trial court. We agree with the State that appellant waived his *Brady* complaint.

Here, the trial court entered a judgment of conviction by jury on August 16, 2016. Appellant filed a motion for new trial on September 7, 2016, raising a single argument of ineffective assistance of counsel. The State filed its *Brady* notice on September 13, 2016. Appellant had until September 15, 2016 to file an amended motion for new trial. The trial court denied appellant's motion for new trial by written order on October 27, 2016. The record does not indicate that appellant filed a second or amended motion for new trial raising the *Brady* issue before the applicable deadline, nor does the record reflect that appellant otherwise raised the *Brady* issue at any time while the trial court possessed plenary jurisdiction. *See Pena*, 353 S.W.3d at 807-09 (holding defendant preserves *Brady* error by raising issue in motion for new trial if nondisclosure is not discovered until after jury retires to deliberate); *accord also Clarke v. State*, 270 S.W.3d 573, 577-81 (Tex. Crim. App. 2008) (holding that appellant preserved *Brady* error by raising argument during new-trial hearing). In sum, there is nothing in the record showing that appellant alerted the trial court to the alleged error.

By failing to raise the issue to the trial court, appellant waived the issue on appeal. *See Jackson v. State*, 495 S.W.3d 398, 420 (Tex. App.—Houston [14th

11

Dist.] 2016, pet. ref'd) (holding appellant failed to raise *Brady* claim in court below and thus failed to preserve error for appellate review).

We overrule appellant's second issue.

## Conclusion

Having overruled appellant's issues, we affirm the trial court's judgment.


/s/     Kevin Jewell
Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jewell.
Do Not Publish — Tex. R. App. P. 47.2(b).